RICHARD J. BONELLI *v.* SANDRA A. BONELLI
(6247)

SPALLONE, FOTI and LAVERY, Js.

Argued April 18—decision released July 3, 1990

*Ruth H. Mantak,* with whom, on the brief, was *M. Jane Christensen,* for the appellant (defendant).

*C. Michael Budlong,* with whom were *Terence S. Ward* and, on the brief, *Kathleen A. Murrett,* for the appellee (plaintiff).

SPALLONE, J. This appeal is before us for the second time, now on remand from our Supreme Court. After the trial court rendered judgment in this dissolution action, the defendant wife filed motions to disqualify the trial judge on the ground that he and the plaintiff's lawyer had served as cocounsel in a prior unrelated case. The defendant appealed the denial of her motions to reargue, to open the judgment, to disqualify the judge and for an evidentiary hearing on the issue of disqualification.

We ruled that the trial court should not have denied the defendant's motion to open and to disqualify, and, accordingly, we did not consider the defendant's other claims. See *Bonelli* v. *Bonelli,* 18 Conn. App. 207, 208–209, 557 A.2d 559 (1989). On appeal, our Supreme Court, finding that there was no impropriety in the trial judge's failure to recuse himself, reversed our decision

and remanded this appeal for our consideration of the remaining claims. *Bonelli* v. *Bonelli,* 214 Conn. 14, 22, 570 A.2d 189 (1990).

The unresolved issues before us are whether the trial court improperly divided the marital property and failed to award the defendant alimony and counsel fees. We affirm the trial court's orders.

After seventeen years, the Bonellis' childless marriage was dissolved by judgment in January, 1987. The court found that the bulk of the gross marital assets, totaling approximately $1,690,000, consisted of real estate and funds inherited by the plaintiff from his parents. The Bonellis' yearly income was found to be generated from the interest and investment of these funds and from rents paid on the properties. The plaintiff was found to be engaged full-time in managing these assets. The defendant, although a licensed real estate broker with a master's degree in education, had no income of her own and had been a full-time homemaker for most of the marriage, caring for the family's two homes, her husband and her father-in-law, who had resided with the couple until his death.

Despite the parties' representations that most of their real property was held in their joint names, the court found that the property had been either inherited by the plaintiff or acquired with inherited funds. The court ordered the partition by sale of the only parcel that the defendant had been instrumental in acquiring for the family. The defendant was ordered to quitclaim her interests in all other joint property. In dividing the marital estate, the court awarded the defendant assets valued at approximately $230,800, 13 percent of the total. Because each spouse had substantial assets and good employment prospects, the court made no award of alimony or attorney's fees.

The defendant's claims assail what she asserts to be the gross inequity of the court's orders. By her calculations, she was awarded a lump sum settlement of $127,243 while the plaintiff was awarded approximately $1,460,000. She claims that the court divided cash assets solely on the basis of whose name was on the account; she kept her bank account of $4323 and the plaintiff kept his account of $359,353. Contradictorily, the court did not find significant the fact that most of the property was held in the names of both spouses, and focused solely on the provenance of the property as inherited by the plaintiff.

The defendant argues that, in making this division of property, the court failed to consider her homemaking contributions or the amount that the properties appreciated in value during the marriage. The defendant received $123,000 as a share of the jointly held property but was forced to quitclaim her interest in all but one parcel, including the marital home she had maintained and improved during seventeen years of marriage. In her view, the quitclaim orders effected a $376,500 settlement from the *defendant* to the *plaintiff*.

Moreover, she has been out of the job market for almost fourteen years, yet the court failed to grant her rehabilitative alimony. From the defendant's perspective, although neither party was found to be at fault, the court awarded her a mere 8 percent of the family assets from which she was to pay her own counsel fees, penalized her for spending her marital years as a homemaker without outside employment, deprived her of property held in her name, left her unemployed without alimony, and denied her request for visitation rights to the family pet. She urges us to find the dissolution orders to be arbitrary and unreasonable.

However much sympathy we may have for the defendant, the trial court's factual findings may not

be rejected merely because we might personally disagree with the conclusions or would have found differently had we been sitting as the finder of fact. *Kaplan* v. *Kaplan,* 186 Conn. 387, 391, 441 A.2d 629 (1982). The scope of our review of the trial court's exercise of its broad discretion in domestic relations cases is limited to a determination of whether the court's conclusions were correct on the law and reasonably reached on the evidence. *Rostain* v. *Rostain,* 214 Conn. 713, 716, 573 A.2d 710 (1990). The trial court has the best opportunity to observe the parties, pass on the credibility of witnesses, and weigh and interpret the evidence. Id. We will indulge every reasonable presumption that the court's action was correct. Id.

In this case, the trial court stated that it had considered the provisions of General Statutes §§ 46b-81 and 46b-82 to determine appropriate property and support awards. The transcripts and the record disclose that the trial court questioned the defendant's credibility, expressly stating, "I also find that the defendant's claims, [as to her contribution to the marital assets] as each one was put to a test, whether it was by cross-examination or by rebuttal and introduction of documents, did not pass the test. Each and every claim of any significance that was tested . . . certainly did not pass muster on accuracy."

In this action, the trial court acted within the broad parameters of discretion necessary to arrive at resolutions of the deep seated and often emotionally charged issues inherent in most dissolution actions. Our review discloses that the trial court's factual findings are supported by the evidence and its conclusions are in accordance with applicable law. We cannot, absent a manifest abuse of discretion, intrude in this intricate process even where we disagree with the result.

The judgment is affirmed.

In this opinion the other judges concurred.