JOSEPH ASKINAZI *v.* ANDREE ASKINAZI
(11602)

O'CONNELL, HEIMAN and SPEAR, Js.

Argued January 4—decision released May 10, 1994

*Carolyn Richter,* with whom was *Claudine Siegel,* for the appellant (defendant).

*Richard G. Kent,* for the appellee (plaintiff).

SPEAR, J. In this appeal from the judgment rendered in a marital dissolution action, the defendant claims that (1) the trial court's financial orders are inconsistent with its underlying findings, (2) the trial court improperly terminated the defendant's survivorship interest

in the plaintiff's pension (survivorship benefit) because it erroneously construed such an interest as alimony rather than property, and (3) the trial court's financial orders failed to protect the interests of the financially disadvantaged defendant. We disagree with all of the defendant's claims and affirm the trial court's judgment.

The trial court made the following findings. The parties were married on December 28, 1980, at Cedarhurst, New York, and there were no children of the marriage. Both parties contributed to the breakdown of the eleven year marriage, but the court ascribed more blame to the plaintiff than to the defendant. Although the plaintiff brought a substantially higher income to the marriage, he used significant joint funds to pay his gambling losses during the marriage.

The court entered the following property distribution and alimony orders. The defendant was awarded the leasehold interest in the premises occupied by the parties in Fairfield together with the cash deposit held by the lessor, a 1983 AMC automobile, her jewelry, fur coats and gold bracelets, a money market fund valued at $2323.21, her individual retirement account (IRA) in the amount of $24,131.47, an inheritance of $4622.11, her interest in a bank account entitled "Claudette Stark in Trust for Andree Askinazi,"[1] and numerous items of furniture and household furnishings. The court also awarded her 15 percent of the plaintiff's United States government pension as alimony to be paid monthly (approximately $400 per month).

The plaintiff was awarded his 1986 Buick Century automobile, his checking account balance in the amount

---

[1] The amount of this account was not stated in the decision. There was testimony at the trial about withdrawals from this account but there was no evidence of the balance.

of $6076.21 and certain household furnishings and items of personal property. Neither party was awarded counsel fees.

The trial court's memorandum of decision did not specifically mention the survivorship benefit that was a part of the plaintiff's pension plan. In response to the defendant's motion for articulation, the trial court stated that it had denied the defendant's request that she be awarded a survivorship interest in the plaintiff's pension.

I

The defendant first claims that the trial court abused its discretion because the financial orders are inconsistent with the court's findings and unreasonable under the statutory criteria for property and alimony awards set forth in General Statutes §§ 46b-81 (c)[2] and 46b-82.[3] We are unpersuaded.

"Our standard of review in domestic relations cases is clear. We will not reverse a trial court's rulings regarding financial orders unless the court incorrectly applied the law or could not reasonably have concluded as it did." *Watson* v. *Watson,* 20 Conn. App. 551, 553–54, 568 A.2d 1044 (1990). "A fundamental princi-

---

[2] General Statutes § 46b-81 (c) provides in relevant part: "In fixing the nature and value of the property, if any, to be assigned, the court . . . shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

[3] General Statutes § 46b-82 provides in relevant part: "At the time of entering the decree . . . the court . . . shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . ."

ple in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria." *Debowsky* v. *Debowsky,* 12 Conn. App. 525, 526, 532 A.2d 591 (1987). In exercising that discretion pursuant to General Statutes § 46b-81, a trial court may assign to either spouse all or any part of the property owned by the other spouse. Id. "Pursuant to General Statutes § 46b-82, a trial court has similar discretion to award alimony to either spouse. These statutory provisions for the award of alimony and assignment of property are permissive, not mandatory. Such awards rest in the sound discretion of the trial court and will not be interfered with unless it appears that such discretion has been abused." Id. "A reviewing court must indulge every reasonable presumption in favor of the correctness of the trial court's action to determine ultimately whether the court could reasonably conclude as it did. . . . This standard of review reflects the sound policy that the trial court has the opportunity to view the parties first hand and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, in which such personal factors such as the demeanor and the attitude of the parties are so significant." (Citation omitted; internal quotation marks omitted.) *Fiddelman* v. *Redmon,* 31 Conn. App. 201, 206, 623 A.2d 1064 (1993).

The defendant claims that she was subjected to menace, threats, physical force and vile and abusive language by the plaintiff. The defendant argues that this is one of the reasons why she should have received more favorable financial orders. The court found, however, that both parties had contributed to the breakdown of the marriage by their "mental and physical actions and reactions." The court went on to find that on some occasions the plaintiff used vile and abusive language when communicating with the defendant as well as physical

force, both of which she returned in a lesser degree. Thus, the trial court found that the defendant had engaged in the same kind of behavior that she complains of with respect to the plaintiff.

The defendant also claims that she was entitled to more favorable financial orders because the plaintiff dissipated their assets through gambling. The plaintiff testified that he and the defendant spent 95 percent of their Saturdays at Jai-Alai. He further testified that, although the defendant bet on the games only once, she loved it and eagerly shared in his winnings. The defendant denied these assertions, except that she admitted to having attended Jai-Alai with her husband. Whether the defendant tacitly approved of the gambling by her conduct, and the weight, if any, to be given to that conduct in its assessment of the causes of the breakdown of the marriage were issues for the trial court to resolve. The trial court reasonably could have found such approval from the conflicting evidence and could have concluded that the defendant, therefore, bore some responsibility for the gambling losses.

The defendant further asserts that with respect to the likelihood of future employment, the court did not properly consider that (1) the defendant is four years older than the plaintiff, (2) the plaintiff had a significantly higher earning capacity than the defendant, and (3) the defendant's social security would abate if she found employment, while the plaintiff's pension would be unaffected by future employment.

The court, in its articulation, stated that it weighed and considered the parties' ages and employability. "The court is not obligated to make express findings on each of these [General Statutes §§ 46b-81 and 46b-82] criteria." *Weiman* v. *Weiman,* 188 Conn. 232, 234, 449 A.2d 151 (1982). Furthermore, the defendant conceded in her brief that the trial court accurately

stated at the hearing[4] on the motion for articulation that "neither one of them is a youngster, and employment does not come easily." Our review of the record and the transcripts reveals no evidence from which the court could have made a finding as to the abatement of the defendant's social security if she found employment.

The defendant next argues that the alimony order leaves her impoverished and the plaintiff in a better financial position than he was in during the marriage. This claim is based on a comparison of the plaintiff's monthly gross income after the dissolution with the parties' joint monthly gross income before dissolution. This comparison is not useful because it does not consider any deductions from gross income or compare the parties' (presumably lower) joint living expenses before their separation with the total of their separate living expenses following the dissolution. The plaintiff's financial affidavit shows significantly higher living expenses than shown by the defendant's, a "need" that the trial court was required to consider pursuant to General Statutes § 46b-82.[5] Neither party will have enough income to meet the monthly expenses claimed in their respective affidavits. The alimony order reduced the defendant's monthly deficit significantly and increased the plaintiff's monthly deficit. In view of the plaintiff's

---

[4] At the September 4, 1992 hearing on the plaintiff's motion for clarification and the defendant's motion for articulation, there was a colloquy between the defendant's counsel and the trial court. The court acknowledged on the record that it was responding to the motion for articulation. The transcript, however, was not signed. Practice Book § 4059 provides for the filing of a signed transcript of an oral decision. The parties relied on this transcript in their briefs and at oral argument. While we do not condone this deviation from the rules of practice, we may disregard certain procedural irregularities and treat the case as the parties have treated and presented it. We do so here. See, e.g., *Lambrakos* v. *Carson*, 174 Conn. 482, 485, 391 A.2d 142 (1978); *State* v. *Beauton*, 170 Conn. 234, 237, 365 A.2d 1105 (1976); *Fratzel* v. *Fratzel*, 155 Conn. 699, 700, 236 A.2d 83 (1967).

[5] See footnote 3.

considerably higher living expenses, we cannot say that this order was inconsistent with the court's findings or unreasonable in light of the statutory criteria.

The defendant also argues that by leaving her with only the assets that she possessed at the time of the dissolution, with the exception of the survivorship benefit, the court apparently felt that she was entitled to those assets only and could make no claim to the assets "appropriated" by the plaintiff. The defendant goes on to argue that the court apparently did not consider the statutory criteria in "this non-allocation-let-everything-sit-where-it-is way of 'distributing' assets." In its memorandum of decision, the trial court specifically points out that the plaintiff had used "significant joint sums" for gambling losses, that he had appropriated about $23,000 for his own use and that the court considered that factor in arriving at its property division. "It is often the case that the appellant, in arguing abuse of discretion, would in reality have this court vary either the weight placed upon specific statutory criteria or the weight placed upon documentary or testimonial evidence. . . . Such an excursion by this court into the domain of the trier is unacceptable. *Carpenter* v. *Carpenter,* 188 Conn. 736, 741–42, 453 A.2d 1151 (1982)." (Citation omitted; internal quotation marks omitted.) *Ashton* v. *Ashton,* 31 Conn. App. 736, 743, 627 A.2d 943 (1993). The defendant's claims here, despite her insistence to the contrary, would have us exercise our discretion in place of that exercised by the trial court.

Although the results of the trial court's decision might have been to leave the parties, except for the survivorship benefit, in approximately the same positions that they occupied at the time of the dissolution, the memorandum of decision clearly indicates that the court considered the statutory criteria in doing so. The trial court, therefore, did not abuse its discretion because it reasonably could have concluded as it did.

## II

The defendant next claims that the trial court improperly terminated her survivorship interest in the plaintiff's pension. We disagree.

### A

Federal statutes allow a retired federal employee, such as the plaintiff, to provide a survivorship pension benefit for his or her surviving spouse.[6] Ten percent of the retiree's pay is deducted each month to help fund this annuity, but upon a dissolution of the marriage, this benefit ends[7] unless the trial court orders that it be continued.[8]

She argues that the court mistakenly characterized the survivorship benefit as alimony rather than property and then, without considering the merits of the defendant's request, terminated the benefit pursuant to the court's arbitrary rule against continuing alimony after the death of the payor. The defendant also claims that by treating the benefit as alimony, the trial court could not have properly considered "the opportunity of each for future acquisition of capital assets and income" and "the contribution of each of the parties to the acquisition, preservation or appreciation of their respective estates" pursuant to General Statutes

[6] Title 5 of the United States Code, § 8339 (j) (1) provides in relevant part: "The annuity . . . for an employee . . . who is married at the time of retiring . . . is reduced . . . in order to provide a survivor annuity for the spouse . . . ."

[7] Title 5 of the United States Code, § 8339 (j) (5) (A) provides in relevant part: "Any reduction in an annuity for the purpose of providing a survivor annuity for the current spouse of a retired employee . . . shall be terminated . . . (ii) after the dissolution of the spouse's marriage . . . ."

[8] Title 5 of the United States Code, § 8341 (h) (1) provides in relevant part: "[A] former spouse of a deceased employee . . . is entitled to a survivor annuity under this subsection, if and to the extent expressly provided for . . . in the terms of any decree of divorce or annulment or any court order or court-approved property settlement agreement incident to such decree."

§ 46b-81 (c).[9] These factors are to be considered in the division of property in a marriage dissolution, but not in awarding alimony pursuant to § 46b-82.[10]

The defendant's argument that the court considered the survivorship benefit as alimony rests solely on a colloquy[11] that occurred during argument on the plaintiff's motion for clarification and the defendant's motion for articulation.[12] Our review of that colloquy, however, reveals that the trial court never addressed the survivorship benefit but was considering only the pension itself. This conclusion is also supported by testimony of the plaintiff and a discussion between the court and counsel during trial.[13]

---

[9] See footnote 2.

[10] See footnote 3.

[11] "The Court: Now, I got the impression in listening to you . . . that any award of alimony which involved his pension would survive his death. I got that impression from you when you were arguing.

"[Defense Counsel]: Your Honor, I certainly did not intend to give that impression. Your Honor, what I was asking of the court is that the court award the survivorship interest . . . If at any time my arguments or statements implied that that would happen without a court order, I had no intention of making that statement because it doesn't—

"The Court: The fact is that I have, except in rare cases where it was agreed to, not extended alimony beyond the death of the payor. In all cases. And I don't see any reason to do that, even if it's the United States government that has to make the payment.

\* \* \*

"[Defense Counsel]: And the court did then intend that that would end with his death because—

"The Court: That is right. Because the court does not and hasn't—and only, as I say, in rare instances where it's agreed to—extended it so that the estate becomes liable. Which would be the instance here."

[12] The motion for clarification asked whether the court intended for the contingencies of death, the defendant's remarriage, or cohabitation to apply to the alimony award. The motion for articulation asked whether the court intended to deny the defendant the pension annuity and asked for the weight given to certain statutory factors under General Statutes §§ 46b-81 (c) and 46b-82.

[13] "The Court: Well, if you can clear it up for me before the case ends because as near as I can make out, that if he passes on before her and doesn't

The court's statement that it did not usually *extend* alimony beyond the payor's death presumes that there is an existing award capable of being extended. The trial court awarded the defendant "as alimony the sum of 15 percent of the plaintiff's United States government pension." The court's comment that it saw no reason to extend the alimony, even if the government had to pay, refers to continuing the alimony award based on the pension itself.

The defendant simply assumes that the court was referring to the survivorship benefit rather than to the termination of the alimony award upon the plaintiff's death. The trial court did not, however, mention the survivorship benefit during the colloquy on which the defendant relies.

## B

Even if we were to accept the defendant's interpretation of the colloquy as showing that the court treated the benefit as alimony, we find her claim of harm unpersuasive for the following reasons: (1) the trial court did not commit error in construing the benefit as a potential source of alimony, rather than as property, under the circumstances of this case; (2) although the trial court stated its practice of not extending alimony beyond the payor's death, our review satisfies us that the court did not arbitrarily apply such a rule, but rather considered all of the relevant factors in arriving at its

---

make her his spousal recipient then she gets nothing.

"[Plaintiff's Counsel]: That's correct, Your Honor.

* * *

"[Defense Counsel]: We're talking about *two different things.*

"The Court: I understand.

"[Defense Counsel]: I think that makes clear the *survivorship* but there's also the question of the *pension itself.*

"The Court: However the *pension itself* would go to nobody if she didn't remain as the spousal nominee.

"[Defense Counsel]: That's correct." (Emphasis added.)

decision; and (3) we are satisfied that the court properly considered all of the relevant factors under General Statutes § 46b-82 in ordering that the benefit be terminated.

The defendant offers no authority for her claim that the survivorship benefit is in fact property rather than alimony. The defendant relies on *Thompson* v. *Thompson,* 183 Conn. 96, 438 A.2d 839 (1981), which she concedes offers only minimal guidance on this issue. In *Thompson,* our Supreme Court noted that vested pension benefits are a "nonforfeitable right"; id., 100 n.3; and that such benefits have a quantifiable present value. Id., 101. The defendant argues that "both of these qualities are more applicable to property than to alimony."

The issue before the court in *Thompson* was whether the court's conclusion that the plaintiff would receive certain pension income if she continued working at her job until age sixty-five was too uncertain and speculative to be considered by the court in fashioning property and alimony orders. Id., 100. In upholding the trial court's financial awards, which took the plaintiff's future pension benefits into account, our Supreme Court stated that "[p]ension benefits represent a form of deferred compensation for services rendered. . . . As such they are *conceptually* similar to wages. General Statutes §§ 46b-81 (c) and 46b-82 *both* require the trial court to consider, inter alia, the occupation and the amount and sources of income of each of the parties when ordering property assignments *and* alimony. Just as current and future wages are properly taken into account under these statutes, so may unaccrued pension benefits, a source of future income, be considered." (Citations omitted; emphasis added.) Id.

While the court in *Thompson* was not called upon to decide whether pension benefits are property or a source of alimony, the language of the Supreme Court's

decision militates against the defendant's position that the survivorship benefit must be treated as property. In *Thompson,* the court pointed out that the key factors to be considered under both the alimony and the property statutes were "the occupation and the amount and sources of income of each of the parties." Id. The trial court considered those factors in the present case. Indeed, the trial court's articulation states that the court intended to deny the benefit and that it had considered *all* of the statutory factors under *both* of the relevant statutes.

Perhaps the reason that Connecticut courts have not directly addressed this issue is that the classification of pension benefits as alimony or property is usually not necessary. "Just as a pension benefit may be viewed as an asset subject to division; it may also be viewed as a source of income from which present or future alimony or support payments may be made. Neither the legislature nor the courts have indicated any preference for one view or the other. The approach which best suits a particular case will depend upon the individual circumstances." 7 A. Rutkin, Connecticut Practice § 25.10, p. 377.[14]

Given the court's consideration of the circumstances of this case and all of the factors under both the alimony and property statutes, we cannot conclude that it was improper for the court to view the benefit as a potential source of future alimony rather than as property.

During the hearing on the motions to articulate and clarify, the trial court *stated* that its practice was not

[14] A decision as to whether a pension benefit is property may well be necessary when a marriage is dissolved in a community property state as illustrated in *Valdez* v. *Ramirez,* 558 S.W.2d 88 (Tex. 1977), rev'd on other grounds, 574 S.W.2d 748 (Tex. 1978). In that case the court held that a survivorship pension, under the same federal statutes involved here, was indeed community property. Id., 93.

to extend alimony beyond the life of the payor. The defendant claims that the *application* of this arbitrary rule prevented the court from properly considering the survivorship benefit.

Use of an arbitrary rule under circumstances that require the exercise of the court's discretion is an abuse of discretion. "Discretion . . . imports something more than leeway in decision-making. It denotes the absence of a hard and fast rule or a mandatory procedure regardless of varying circumstances." (Citation omitted; internal quotation marks omitted.) *State* v. *Corchado,* 200 Conn. 453, 464, 512 A.2d 183 (1986). Here, although the trial court did *state* that it rarely extended alimony beyond the life of the payor, its memorandum of decision and articulation show that the court properly considered the circumstances and statutory factors in terminating the survivorship benefit. In light of this, we are not persuaded that the court actually *applied* such an arbitrary rule here. In marital dissolution matters, "the action of the trial court will not be disturbed unless it abused its legal discretion, and in determining this the unquestioned rule is that great weight is due to the action of the trial court and *every reasonable presumption should be given in favor of its correctness.*" (Emphasis added.) *Jacobsen* v. *Jacobsen,* 177 Conn. 259, 263, 413 A.2d 854 (1979); see also *Knock* v. *Knock,* 224 Conn. 776, 795, 621 A.2d 267 (1993); *Rostain* v. *Rostain,* 214 Conn. 713, 716, 573 A.2d 710 (1990); *Blake* v. *Blake,* 207 Conn. 217, 229, 541 A.2d 1201 (1988). We do not find an abuse of discretion.

C

The defendant also claims that the trial court failed to consider properly two factors under the property statute because of its view that the survivorship benefit was alimony. Those factors are (1) the contribution of each of the parties in the acquisition, preservation

or appreciation in value of their respective estates, and (2) the opportunity of each party for future acquisition of capital assets and income.[15] We are unpersuaded.

In its memorandum of decision, the trial court specifically discussed the factor of the parties' contributions to the acquisition, preservation and appreciation of their respective estates: the court discussed the monetary contributions of each party, the stock accounts they set up jointly and the withdrawals therefrom. In addition, the court awarded the defendant the IRA in her name notwithstanding that the court could have found that the plaintiff had contributed from $6000 to $10,000 of the $24,137.47 in that account at the time of the dissolution. The court stated that it considered these facts in "arriving at its property division." Also, at the hearing on September 4, 1992, there was a discussion of the opportunities of each of the parties to acquire income through future employment.[16] The defendant's interest in a bank account held in trust for her by her daughter is a potential source of income for the defendant.

The only statutory property factor about which there is not a specific discussion, or an award indicating that the factor was considered, is the opportunity of each party for future acquisition of capital assets. The trial court, however, is not required to list and discuss each of the statutory factors. *Weiman* v. *Weiman*, supra, 188 Conn. 232. The trial court stated in its articulation that it had considered all of the statutory factors under both of the relevant statutes. Furthermore, the

---

[15] General Statutes § 46b-81 (c), set forth in footnote 2.

[16] "The Court:—There isn't any question that the plaintiff's . . . employability is in like measure to that of the defendant who has had a succession of jobs. The court gave weight to both of their employabilities, realizing, of course, that she's—neither one of them is a youngster, and employment doesn't come easily, and so that it accepted at this time neither one is employed. And so on that basis, the decision was rendered."

defendant conceded in her brief that *neither* party is likely to have much opportunity to increase income *or assets* in the future.

The issues were hotly contested in this case. Each side claimed, and the court found, physical and mental abuse by the other. The parties could not agree on the division of even small household items and the court had to divide all of the property, including washcloths and napkins. "The trial court has the best opportunity to observe the parties, pass on the credibility of witnesses, and weigh and interpret the evidence. . . . In this action, the trial court acted within the broad parameters of discretion necessary to arrive at resolutions of the deep seated and often emotionally charged issues inherent in most dissolution actions. . . . We cannot, absent a manifest abuse of discretion, intrude in this intricate process even where we disagree with the result." (Citation omitted.) *Bonelli* v. *Bonelli,* 22 Conn. App. 248, 252, 576 A.2d 587, cert. denied, 216 Conn. 819, 581 A.2d 1054 (1990).

Our review of the record and the transcripts persuades us that the court terminated the survivorship benefit after carefully considering all of the relevant statutory factors. That consideration is apparent on the face of the memorandum of decision. "On appeal, the defendant bears the burden of proving to this court that the trial court did not consider the proper criteria . . . ." *Mihalyak* v. *Mihalyak,* 11 Conn. App. 610, 620, 529 A.2d 213 (1987); see also *Siracusa* v. *Siracusa,* 30 Conn. App. 560, 567–68, 621 A.2d 309 (1993). The defendant has not carried that burden.

### III

The defendant's last claim is that the trial court had a duty to protect the defendant under the rationale of *Sweet* v. *Sweet,* 190 Conn. 657, 664, 462 A.2d 1031 (1983), which states that "[t]he court has a duty to

shape its orders so that the family, especially those who are economically at risk, are given protection." The facts of *Sweet* v. *Sweet,* supra, 657, are very different from the present facts. In *Sweet,* the court awarded the family home, which represented about 90 percent of all the family assets, to the plaintiff. The court did so because it was proper to "protect the mother and children by giving them shelter and some financial security for the future." Id., 664. Here, in contrast, the defendant concedes that, with the exception of the annuity, the parties received "relatively equal shares of the estate." Such a distribution could hardly be said to violate any duty of the court to protect the defendant.

The defendant's further argument, that without the annuity she will be at risk of needing public support if she survives the plaintiff, is completely speculative. The defendant is four years older than the plaintiff and may not survive him. Moreover, the evidence of periodic cash gifts to the defendant from her family, the trust fund set up for the defendant by her daughter, and the apparent lack of any need to draw on her IRA, although eligible to do so, indicate that the defendant will probably not need to seek public assistance should she survive the plaintiff.

The judgment is affirmed.

In this opinion the other judges concurred.