[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]MEMORANDUM OF DECISION
This action was commenced by the plaintiff Arthur Hunt by complaint dated March 11, 1992 seeking a dissolution of the marriage as well as ancillary relief. On March 27, 1992, the defendant Gail Hunt appeared by counsel and filed a cross complaint seeking a marital dissolution as well as alimony, fees and orders relating to the plaintiff's estate. On November 17, 1992 counsel for the defendant was granted permission to withdraw as her attorney. Since December 20, 1992 the defendant has appeared pro se, representing herself in this action.
The matter appeared on the uncontested list of December 16, 1994 when the parties presented the court a written agreement dated March 15, 1994. After hearing from the parties and upon review of the parties' financial affidavits the undersigned indicated that the terms of the agreement were not acceptable to the court. In addition, the court expressed its concerned that the plaintiff's financial affidavit filed at the hearing did not enumerate two pensions in which it became evident, upon the court's questioning, that the plaintiff had vested entitlements. The court indicated that the matter would be placed on the next limited contested list and directed the plaintiff to bring documentation relating to his pensions to the next court CT Page 3626 appearance. The evidentiary hearing took place on March 24, 1995.
Based on the evidence adduced at the hearing the court makes the following findings:
Mr. and Mrs. Hunt were married in Abington, Massachusetts on August 23, 1973. The parties have one child of the marriage, a daughter who is now twenty three years old. In addition, the defendant has two adult children from her first marriage.
The plaintiff is thirty nine years old and in good health. His Social Security Number is 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 (Plaintiff's Exhibit 1). A member of the Teamsters Union, he is employed as a truck driver by New England Frozen Foods. His affidavit dated March 24, 1995 and filed with the court indicates that he grosses approximately five hundred and ninety four ($594.00) dollars a week. The plaintiff resides in Southboro, Massachusetts and is the father of an eight month old child whose mother is not the defendant.
The defendant is forty eight years old. She has a high school education and two years of college which she last attended approximately ten years ago. She has a number of health ailments for which she takes prescriptive medications, including Paget's disease, diabetes, high blood pressure, as well as a heart ailment for which she takes nitro-glycerin. The defendant has also been diagnosed as having manic depression for which she has been told to take a regimen of lithium. She indicated that she is not presently taking this medicine because she can't afford it. The defendant was last employed approximately three years ago when she held two jobs at the same time, at Cumberland Farms and Roy Rogers, working approximately eighty hours a week. At present the defendant is unemployed and living with one of her adult children in Dayville, Connecticut.
Until the beginning of March the defendant was receiving Social Security Disability in the amount of one hundred and twenty dollars ($120.00) a month. She is concerned, however, that her Social Security may be discontinued because she has been unable to afford the cost of a doctor's appointment which is necessary to verify her continuing entitlement. The defendant has been dependant as well on her receipt of alimony but the plaintiff has been an unsteady payer. On May 11, 1992, the court ordered the plaintiff to pay to the defendant the sum of eighty CT Page 3627 ($80) dollars a week as temporary alimony and to maintain her on health insurance as available to him at his place of employment. Subsequently, on October 26, 1992 the plaintiff was found in contempt of court for his failure to pay the alimony order. At the March 24, 1995 hearing the plaintiff was again in arrears on account of the pendente lite orders. He presented funds to the defendant totalling seven hundred and twenty ($720) dollars to bring himself current with respect to the court orders.
The Hunts have been separated since the summer of 1991. The defendant testified that they are apart because her oldest daughter was unwilling to bring her own child to the Hunt's home with Mr. Hunt present on the basis that he had molested her when she was a child. Mrs. Hunt testified that her husband became angry and left. Mr. Hunt, while acknowledging that some child molestation had taken place when Mrs. Hunt's children were young, denied that this was the cause of the parties' separation. He claimed that the molestation events took place more than two decades ago and that the parties remained together for years afterward. Additionally, he testified that after an initial period of investigation the State declined to prosecute the charges and permitted him to remain in the home with the children. He stated at trial that he separated from the defendant because of frequent arguments and financial difficulties. It is clear from the evidence that the marriage has broken down irretrievably and should be dissolved.
The assets of the parties consist, in the main, of a one hundred acre tract of land in Caribou, Maine as well as the plaintiff's interest in two pension plans. Their former home has been foreclosed. Each has bank accounts with minimal balances. The plaintiff owns "penny" stocks which he claims have nominal value. Additionally, his financial affidavit reflects indebtedness of approximately twenty thousand ($20,000) dollars on which he indicates he is making no payments. While he testified that he has incurred most of these bills since the separation for his living expenses, he claimed that three of the bills, Sears, Grossman's and JC Penny's were incurred while the parties were living together. These three liabilities total approximately twenty five hundred ($2500) dollars.
The Maine acreage was purchased by the Hunts for approximately twenty eight thousand ($28,000) dollars and is currently leased by a farmer who pays rent of eight hundred ($800.00) dollars a year to Mrs. Hunt. While neither party CT Page 3628 appears to have any direct involvement in this property, the defendant testified that it was purchased for her daughters' benefit as recompense for Mr. Hunt's earlier child molestation. Mr. Hunt vehemently denies this purpose to the purchase and believes that he should be entitled to receive one half of the property. He testified that the property is in the defendant's name alone. The parties disagree as well as to the present value of the property. While the plaintiff's affidavit posits a value of thirty thousand ($30,000) dollars, the defendant asserted that the property is worth twenty thousand ($20,000) dollars. Neither claim was substantiated by any extrinsic evidence of present value.
The parties have health insurance available to them through the plaintiff's employment and his membership in the Teamsters Union. During the course of the hearing, counsel for the plaintiff asserted that by applicable Massachusetts law the defendant is entitled to remain covered by this insurance indefinitely with some increased cost should the plaintiff remarry. At the hearing on March 24, 1995 the defendant presented two documents relating to health costs. One was a billing from the Plainfield Medical Associates, P.C. claiming a balance of one hundred and thirty eight ($138) dollars as of December 4, 1991. The second document was a demand letter written on January 13, 1995 on behalf of the MedCenter of Central Massachusetts seeking payment of four hundred and seventy four ($474) dollars for medical services provided to the defendant. (Defendant's Exhibit A). It was not clear from the evidence whether these services should be covered by the plaintiff's health insurance; it was evident that the defendant has no ability to pay either bill.
The plaintiff is a participant in two pension plans. One plan, entitled the New England Teamsters Trucking Industry Pension Fund, is an employer-contributed defined benefit pension plan in which the plaintiff has a vested entitlement. Based on his present and past earnings as well as years of service the plaintiff is presently entitled to receive the monthly sum of one thousand two hundred and nineteen ($1219) dollars a month at his normal retirement age of sixty five. (Plaintiff's Exhibit 1) The Summary Plan Description of this plan indicates that the plaintiff may be eligible for early retirement at a reduced pension as soon as age fifty two so long as he then has the requisite number of years of membership in the plan. (Plaintiff's Exhibit 3, Summary Plan Description, page 12.) CT Page 3629
This plan is covered under applicable provisions of the Employee Retirement Income Security Act of 1974. The plaintiff's interest in this plan can be made subject to a Qualified Domestic Relations Order. (Plaintiff's Exhibit 3, Summary Plan Description)
In addition to Mr. Hunt's interest in the Teamster's Pension Plan he is vested in another plan, the Massachusetts Mutual Life Insurance Company pension. While evidence about this plan was scant, it is evident from the documentation provided by the plaintiff at trial that the Mass. Mutual plan is a defined benefit pension plan which entitles Mr. Hunt to receive the sum of two hundred and thirty three ($233.03) dollars and three cents a month commencing on June 1, 2020. (Plaintiff's Exhibit 2)
Counsel for the plaintiff argued at trial that these pensions may never have any value to the plaintiff since they are dependent on his survival until retirement age. The plaintiff's interests in these plans are assets, nevertheless, which the court may take into consideration in formulating its alimony and property orders. Thompson v. Thompson, 183 Conn. 96 (1981),Rummel v. Rummel, 33 Conn. App. 214 (1993). So, too, they are assets in which the court may grant the defendant an interest through a Qualified Domestic Relations Order. Askinazi v.Askinazi, 34 Conn. App. 328 (1994).
At the initial hearing on this matter on December 16, 1994 the plaintiff presented a document entitled "Separation Agreement" dated March 15, 1994. (Plaintiff's Exhibit 4). The plaintiff seeks enforcement of that agreement. The court has the duty at the final hearing to review any agreement presented by the parties and if the court finds that the agreement is not fair and equitable, ". . . it shall make such orders as to finances and custody as the circumstances require." Connecticut General Statutes § 46b-66. The court has a duty to conduct a searching inquiry to make sure that a settlement agreement in a marital dissolution action is substantially fair and has been knowingly negotiated. Hayes v. Beresford, 184 Conn. 558 (1981), Monroe v.Monroe, 177 Conn. 173 (1979). The court does not find this agreement to be substantially fair. This unemployed defendant, after more than twenty years of marriage to the plaintiff and in her current precarious state of health is entitled to the receipt of alimony from her husband. So, too, she is entitled to security in her senior years. The traditional purpose of alimony CT Page 3630 is to provide support to a spouse who has been, in legal contemplation, abandoned by her spouse. It is based on one's continuing duty of support. Hotkowski v. Hotkowski, 165 Conn. 167
(1973); Stoner v. Stoner, 163 Conn. 345 (1972). In this case the plaintiff left the defendant while she was unemployed and in a precarious financial condition. Their house was foreclosed. She testified that she lived for a while in the back seat of her car. She was abandoned by the plaintiff de facto as well as de jure.
While the notion of time limited alimony has gained some judicial currency, it is only appropriate in those situations in which the court can find that the end of the term of alimony is likely to coincide with the alimony recipient's ability to support herself. Ippolito v. Ippolito, 28 Conn. App. 745 (1992). Such a forecast is not warranted in this instance. The Separation Agreement submitted to the court included no provision for periodic alimony but did have a provision for a lump sum payable over approximately five years. The court regards this agreement as having the same fatal flaw as would a time limited alimony award in this case.
Based on the evidence adduced at the hearing the court makes the following orders:
The parties' marriage is dissolved on the basis of its irretrievable breakdown. The defendant shall be entitled to resume her birth name, Gail L. Lincoln.
The plaintiff shall pay periodic alimony to the defendant in the amount of one hundred ($100.00) a week due and payable once a week by immediate wage execution. Counsel for the plaintiff is directed to prepare the documentation necessary for a wage execution and to forward it to the plaintiff's employer within thirty days from the date of this Memorandum of Decision with a copy simultaneously filed in the Clerk's office. Until such time as the wage execution takes effect, the plaintiff shall make his weekly payments to the defendant by Friday of each week. This order is premised on the assumption that the defendant shall continue to remain eligible to receive Social Security Disability payments. All alimony payments to the defendant shall be mailed to her at 61 Pleasant View Drive, Dayville, Connecticut.
The plaintiff shall maintain the defendant, at his expense, as a beneficiary of his employment and/or union membership related health insurance for so long as applicable law permits. CT Page 3631 The plaintiff is further directed to provide to the defendant forthwith any documentation she made need, including an insurance card, so that she may avail herself of this entitlement.
As a property settlement, the defendant shall be entitled to receive, by way of a Qualified Domestic Relations Order, the sum of six hundred and nine ($609.00) dollars a month from the plaintiff's interest in the New England Teamsters and Trucking Industry Pension Fund commencing at the earliest date that the plaintiff shall be entitled to receive a normal retirement pension. In the event the plaintiff elects to retire before his normal retirement age, the defendant shall receive one half of the plaintiff's monthly gross retirement or the sum of six hundred and nine ($609) dollars, whichever sum is greater.
In the event the plaintiff has any legal interest in and to the Caribou, Maine acreage, he shall quit claim all of his right title and interest in and to this property to the defendant within thirty days from the date of this Memorandum of Decision.
Each party shall be responsible for the debts enumerated on their respective financial affidavits and shall hold the other harmless therefrom. In addition thereto, the plaintiff shall be solely responsible for the payment of the health care expenses set forth on Defendant's Exhibit 1 in the aggregate amount of six-hundred and twelve ($612) dollars and shall hold the defendant harmless therefrom.
Counsel for the plaintiff shall prepare the Qualified Domestic Relations Order and submit it to the court for its approval and signature within thirty days of the date of this Memorandum of Decision. Prior to submitting the proposed Qualified Domestic Relations Order to the court, counsel for the plaintiff shall submit it to the Plan Administrator, Board of Trustees, New England Teamsters and Trucking Industry Pension Fund, 535 Boylston Street, Boston, Mass. 02116, for its review. The court shall retain jurisdiction over the parties and the Qualified Domestic Relations Order in the event the Plan Administrator requires any alterations or clarifications in order to implement the terms of the court's orders regarding the defendant's pension entitlement as hereinbefore stated.
Counsel for the plaintiff shall prepare the judgment file.
In formulating the orders herein the court has considered CT Page 3632 relevant statutory and decisional law with particular regard to Chapter 815j of the Connecticut General Statutes and the criteria set forth in Connecticut General Statutes §§ 46b-81 and 46b-82.
Bishop, J.