[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a suit for dissolution of marriage brought by the plaintiff husband against the defendant wife. The parties were married on February 27, 1960 in Bridgeport, Connecticut. In 1965 the parties adopted a child who was then 25 days old and who is now 30 years of age. From that time until 1978, the defendant was engaged in taking care of the house and taking care of the child.
At the time of the marriage, the plaintiff was working in a greenhouse in Westport and the defendant was working in a lace factory in Norwalk operating a lace machine. Both of the parties were born in Puerto Rico. The plaintiff finished high school. The defendant, however, left school in the sixth grade. At that time she worked sewing gloves at home. At age 16 she joined the convent which was located in Huntington, Long Island. She left the convent at the age of 20 and came to Bridgeport with her sister when she commenced employment with Norwalk Lace.
In 1964 the parties moved to Puerto Rico to run a sugar cane farm owned by the defendant's parents. They worked very hard on this farm, but because of poor weather, the crops failed and they had to return to Bridgeport in 1965. Upon their return, the plaintiff obtained a job with Avco Lycoming and then General Electric as a machine operator. After a year, he obtained a job with Dow Corning as a machine operator and then subsequently as a CT Page 10167 supervisor. He remained with Dow Corning until his termination for disability in 1991.
The defendant remained at home taking care of the house and the child until 1978 when she returned to work. She worked for six months at Speedmaster and then commenced her employment with Dinan Center as a housekeeper until her retirement in 1993 at the age of 62.
The plaintiff's health is poor. He is a diabetic. He has had two heart attacks, two disc operations and a shoulder operation. In 1991, he was injured on the job and has been receiving worker's compensation since that time and is unable to do his job anymore. He was in obvious discomfort during the trial. He is unable to sit still for long periods of time and he has difficulty walking. He is left handed but has a definite impairment of motion of his left arm. He complains of constant back pain. The plaintiff receives $1,610 per month by way of Worker's Compensation long term disability. He is 57 years of age.
The defendant is 64 years of age. At the time of their marriage, she was 29 and the plaintiff was 21. She is in apparent good health. Her first language is Spanish, so that the court was not absolutely sure that she understood some of the questions that were asked. It is certainly clear that she is a very religious person and believes in the power of prayer. The plaintiff's chief complaint was what he claimed was her religious fanaticism.
Unfortunately, much of the testimony offered by the parties was diametrically opposed. Indeed, when each of the parties were asked about specific testimony of the other, each was quick to describe the other as a liar. It is unnecessary to characterize the testimony of each of the parties. Suffice to say that the court considers the testimony of the plaintiff to be the more credible.
The marriage broke down in 1993 when the plaintiff determined he could no longer stand the defendant's harassment concerning his affairs with other women. The defendant did produce a Kleenex tissue with lipstick that she claimed she found on the floor of the plaintiff's car. The plaintiff maintained he had never seen it before and that she was lying. He denied any affair with any other woman during the course of his marriage. The court has accepted this testimony and finds that there is no evidence, other CT Page 10168 than the defendant's suspicious and visions, of the plaintiff's infidelity.
The defendant, however, testified that while they were in Kentucky, about 1975, that the plaintiff started rejecting her and wanted nothing to do with her. She stated that he humiliated her in front of others. The plaintiff testified that the defendant would not participate in social affairs with him. In 1993, he stood up from the dinner table, threw down his plate and said he could not take her criticism any more and that he wanted a divorce. It is clear the marriage has broken down. The court finds the marriage has broken down because of the incompatibility on the part of each of the parties and that they are equally at fault for the breakdown of the marriage.
In August, 1994, the parties sold the family home and went to live in separate places. Each has been living in rented premises since that date. The money received on the sale of the family home has been held in escrow since that date and amounts to $139,913.99 plus interest. This property was at 135 Del Drive in Stratford and was purchased by the parties in 1984 for $105,000. This property was owned jointly. At the time of the sale of the home, they divided their tangible personal property, sold what they did not want, and split the proceeds.
Each of the parties has worked extremely hard throughout the marriage. The plaintiff worked two jobs through much of the marriage. The defendant kept the house, raised their child and was employed continuously from 1978 until her retirement in 1993.
The defendant seeks a larger share of the proceeds from the sale of the house. During the marriage, she received $15,000 by way of inheritance on the sale of the family farm in Puerto Rico. She also received $5,000 upon her retirement. The plaintiff, however, seeks an equal division of the proceeds of the sale of the house. It is his position that the money the defendant received she kept for herself; that from her earnings she bought the food, her own clothing, and paid her own personal expenses; that he paid all the house expenses all during the marriage and earned twice as much as the defendant earned. He testified that she had purchased four new cars for herself from her money and that he had purchased only used cars.
The court finds that even though there is an age difference, the opportunity of each of the parties for the future acquisition CT Page 10169 of capital assets and income is probably equal. It is clear that the plaintiff with his disabilities will not be able to return to any productive work. Considering the length of the marriage and the contribution of each of the parties in the acquisition, preservation and appreciation in value of their respective estates, the property of the parties should be equally divided.
The defendant has savings in the amount of $38,000. The plaintiff has savings of $1,900. These accounts should be equally divided which means the defendant should pay the plaintiff $18,050. However, in the division of the proceeds of sale of their personal property, the plaintiff kept the money on the sale of the tiller in an amount of $350 while the defendant kept the money on the sale of the sewing machine and kitchen table for $180. The plaintiff then kept $170 more than the defendant, or a $85 difference. The $85 should be deducted from the amount the defendant needs to pay to the plaintiff leaving a net amount of $17,975.
In reaching a decision in this matter, the court has treated each of the parties' pensions as a source of income and not property to be assigned pursuant to § 46b-81 of the General Statutes. Pension benefits may be viewed as an asset subject to division or as a source of income from which present or future alimony or support payments may be made. Askinazi v. Askinazi,34 Conn. App. 328 (1994).
In reaching a decision with regard to property, the following language from the case of O'Neill v. O'Neill, 13 Conn. App. 300,311 (1988), has been considered by the court:
 A property division ought to accord value to those nonmonetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage. We hold, accordingly, that an equitable distribution of property should take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking responsibilities.
In determining the proper orders in this case the court has CT Page 10170 considered also the following:
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes § 46b-82; Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 42
(1970); `This court has reiterated time and again that awards of financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court.' (Citation omitted.) Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisitions of assets of each of the parties, (citation omitted), no single criterion is preferred over all the others. In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight. Valente v. Valente, 180 Conn. 528, 530
(1980); Watson v. Watson, 221 Conn. 698, 710 (1992).
The court has considered all of the criteria of §§ 46b-81,46b-82 and 46b-62 of the General Statutes together with all of the evidence and the case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v.Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman,188 Conn. 232, 234 (1982).
Suffice to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v. Leo, 197 Conn. 1, 5 (1985), and that the court need not give equal weight to each factor. Kane v.Parry, 24 Conn. App. 307, 313-14 (1991).
The court, in addition to the foregoing findings, finds as follows:
1. There is the requisite jurisdiction. CT Page 10171
2. The allegations of the complaint have been proved and are true.
3. There has been an irretrievable breakdown of the marriage.
4. The parties are at equal fault for the breakdown of the marriage.
The court enters the following orders:
1. A decree of dissolution of marriage shall enter on the ground of irretrievable breakdown of the marriage.
2. The plaintiff shall pay the defendant alimony in the amount of $500 per month commencing October 1, 1995 and payable on the first of each month thereafter terminable upon the death of either of the parties or the defendant's remarriage. An immediate order for wage withholding shall enter against the plaintiff's Worker's Compensation award. Since the purpose of the provisions of § 31-320 of the General Statutes is to provide support money for the claimant and his dependent's, this provision of the statutes does not apply to an alimony award of the plaintiff's spouse. Young v. Young,
13 Conn. L.Rptr. No. 17, 547 (April 14, 1995); Rodriguez v. Rodriguez,
14 Conn. L.Rptr. No. 7 (July 3, 1995).
3. The defendant shall pay to the plaintiff the sum of Seventeen Thousand Nine Hundred and Seventy-five ($17,975) Dollars within thirty (30) days from the date hereof to equalize the division of bank accounts between the parties.
4. The money held in escrow from the sale of the family residence in the approximate amount of $140,000 plus interest shall be divided equally between the parties. Each party shall be equally responsible for any income tax consequences for income from interest earned and for capital gains on the sale of said property, if any. It is assumed that there would be no gain in view of the $125,000 exclusion from capital gains for parties over the age of 55 on the sale of their principal residence.
5. The plaintiff's two 401(K) accounts at Dow Corning in the amount of $125,328 shall be divided equally between the parties. The one half payable to the defendant shall be placed in an IRA account in the defendant's name so that CT Page 10172 there would be no income tax consequences to the defendant. Such IRA account shall be established by the defendant prior to such transfer. Any income tax consequence on defendant's or plaintiff's subsequent withdrawal shall be the obligation of each party upon withdrawal from his or her separate account.
6. The plaintiff shall keep his interest in the Dow Corning Pension Plan free of any claim or demand by the defendant.
7. The defendant shall keep her interest in her pension plan free of any claim or demand by the plaintiff.
8. The plaintiff has received a specific award of Worker's Compensation and may be entitled to additional compensation benefits. The plaintiff is willing to divide such an award equally with the defendant. The court, therefore, orders that the proceeds of such an award shall be divided equally between the parties after the deduction of attorney's fees and usual costs.
9. The plaintiff shall maintain life insurance in the amount of $49,000 naming the defendant as first irrevocable beneficiary thereof for so long as he is obligated to pay alimony. The plaintiff shall furnish the defendant with proof of the existence of such coverage and proof of her designation as beneficiary thereof within thirty (30) days of the date hereof and annually thereafter.
10. Except as set forth herein, the plaintiff shall keep those assets as appear on his financial affidavit free from any claim or demand by the defendant.
11. Except as set forth herein, the defendant shall keep those assets as appear on her financial affidavit, free of any claim or demand by the plaintiff.
12. Such tangible personal property as is in the possession of each of the parties shall be the property of the possessor, free of any claim or demand by the other party.
13. Each of the parties shall be responsible for his or her own liabilities and shall indemnify and hold harmless the other party from any claim or demand thereon. CT Page 10173
14. Each of the parties shall pay his or her own attorney's fees.
Judgment shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III, JUDGE