RUTH M. THOMPSON *v.* ROBERT C. THOMPSON

BOGDANSKI, PETERS, HEALEY, ARMENTANO and WRIGHT, Js.

Argued December 5, 1980—decision released February 10, 1981

*John J. Coughlin,* for the appellant (plaintiff).
*Vincent A. Koblish,* for the appellee (defendant).

WRIGHT, J. This appeal from a judgment rendered in a dissolution proceeding, involving property division and alimony orders, concerns the extent to which a trial court may take into account unaccrued pension rights and the expectancy of receiving an inheritance in making such orders. The trial court's finding,[1] which is not subject to material correction,[2] reveals that the parties had been married for twenty-six years. Both parties worked full time. The plaintiff wife was a registered nurse netting $217.35 per week at the time of the hearing; the husband netted $169.94 per week. The plaintiff also had, in conjunction with her mother, an interest in some savings accounts and stocks. The only child of the marriage was over eighteen years of age at the time the orders were rendered by the trial referee. Those orders provided that the plaintiff was to receive the defendant's one-half equity interest in their home, but also required her to pay $19,000, representing one-half of the total equity in the home, to the defendant for that interest. Periodic alimony was neither claimed by the plaintiff in her prayer for relief nor ordered by the court. On appeal, the

[1] Because the finding was filed on April 26, 1979, the Practice Book revisions which took effect on July 1, 1979, do not apply to this appeal. See Practice Book, 1978, § 3166.

[2] We decline to make the factual corrections sought by the plaintiff because the facts she wishes to add either were disputed; see *Kuick* v. *Twarkins,* 171 Conn. 149, 151, 367 A.2d 1380 (1976); or amounted to a substitution of counsel's language for that of the court. See *Cleveland* v. *Cleveland,* 165 Conn. 95, 96-97, 328 A.2d 691 (1973).

plaintiff argues that these orders were the result of an abuse of discretion by the trial court and that the court erred in relying both on evidence of pension benefits the plaintiff would receive if she continued to work at her present job until age sixty-five and on evidence of a potential inheritance she might receive.

With respect to the potential inheritance, additional background material is necessary to put the plaintiff's claim in proper perspective. The defendant introduced evidence showing that the plaintiff was listed, along with her elderly mother, as a joint owner with survivorship rights in a savings account in the amount of $9886.93. In addition, the plaintiff and her mother were joint owners of several savings certificates in the aggregate amount of $21,786.65 and stock certificates valued at $24,638. This evidence tended to show that the plaintiff held a present property interest in the savings accounts. See General Statutes § 36-3. Seeking to rebut the defendant's proof, the plaintiff introduced evidence which demonstrated that these jointly held assets were initially acquired with the mother's funds and that the plaintiff considered these funds to be owned entirely by her mother. Further evidence offered by the plaintiff indicated that she was to receive one quarter of her mother's estate upon her death. The court's reliance on this evidence is now advanced by the plaintiff as grounds for reversal.

In *Krause* v. *Krause*, 174 Conn. 361, 364–65, 387 A.2d 548 (1978), we held that evidence of the net worth of a spouse's mother was properly excluded because any potential inheritance the spouse might receive upon the mother's death was merely an inchoate right and was too speculative a factor upon

which to base an order assigning property. Relying on *Krause,* the plaintiff in the present case contends that the trial court's conclusion that the plaintiff could reasonably expect to receive upon her mother's death at least a quarter of her mother's assets, the total value of which was $66,124.62, was legally incorrect.

Two observations make it clear that the plaintiff cannot profit from this claim, even though we do not retreat from the rule articulated in *Krause.* First, the evidence of the extent of the potential inheritance was introduced by the plaintiff. The rule has long been that a party may not secure a reversal on the basis of an error which he induced. See *Bansak* v. *Pawelczyk,* 173 Conn. 520, 523, 378 A.2d 569 (1977); Maltbie, Conn. App. Proc. § 40. Having invited the court to consider the evidence of the potential inheritance, the plaintiff may not now complain that the court accepted her invitation.

The plaintiff's rationale for introducing this evidence becomes apparent in light of our second observation. Any error committed by the court with respect to the potential inheritance was favorable to the plaintiff. Faced with the bare fact of joint ownership in the savings accounts, the court could well have treated the accounts as the plaintiff's assets. By taking into consideration the proffered evidence showing that only one quarter of these assets were destined for the plaintiff, the court diminished the size of her estate. This, of course, worked to her advantage. Because the court's action was favorable to the plaintiff, it is not a ground for reversal. See Maltbie, Conn. App. Proc. § 39.

The plaintiff also takes issue with the court's conclusion that she would receive $570 per month as a pension if she continued working for her present

employer until age sixty-five. Again, the plaintiff's claim is based upon the pension being too speculative in nature to be considered by a court fashioning alimony and property assignment orders. We cannot agree. Pension benefits represent a form of deferred compensation for services rendered. *In re Marriage of Brown,* 15 Cal. 3d 838, 845, 544 P.2d 561 (1976). As such they are conceptually similar to wages. General Statutes §§ 46b-81 (c) and 46b-82 both require the trial court to consider, inter alia, the occupation and the amount and sources of income of each of the parties when ordering property assignments and alimony. Just as current and future wages are properly taken into account under these statutes, so may unaccrued pension benefits,[3] a source of future income, be considered. See Foster & Freed, "Spousal Rights in Retirement and Pension Benefits," 16 J. of Fam. L. 187, 196–200 (1977–78).

The plaintiff's assertion that pension benefits are as uncertain and speculative as an expected inheritance is unsound. It is true that the exact amount of the benefits to be received often will depend upon whether the employee survives his retirement age, how long he lives after retirement and what his compensation level is during his remaining years

---

[3] By unaccrued pension benefits we mean those benefits which will accrue in the future if the employee continues to work for the employer. In the case of a defined benefit plan, "accrued benefits" are determined under the employer's pension plan and are expressed as an annual benefit commencing at normal retirement age. 26 U.S.C. § 411 (a) (7) (A). For a defined contribution plan, the accrued benefit is simply the balance in an employee's account under the plan. Id. Vested benefits on the other hand, refer to those accrued benefits to which the employee has a nonforfeitable right to receive at retirement age whether or not he is in the service of the employer at that time. See Lee, "Credited Service After ERISA," 31 Tax L. Rev. 365, 375, 389 (1976). See also 26 U.S.C. § 411 (a) (3).

of service. But these contingencies are susceptible to reasonably accurate quantification. See Hardie, "Pay Now or Later: Alternatives in the Disposition of Retirement Benefits on Divorce," 53 Calif. St. B.J. 106, 108–109 (1978). The present value of a pension benefit may be arrived at by using generally accepted actuarial principles to discount for mortality, interest and the probability of the employee remaining with the employer until retirement age. Id. In contrast, the present value of a potential inheritance is extremely difficult to calculate, largely because of the unquantifiable aspects of human nature which often cause wills to be revised. See *Krause* v. *Krause,* supra. We conclude, therefore, that the court did not err in considering evidence of the plaintiff's unaccrued pension rights.[4]

Finally the plaintiff claims that the court abused its discretion by failing to order periodic alimony and by requiring her to pay the defendant for his interest in their home instead of assigning it to her free and clear. In reviewing this claim, we determine whether the court could reasonably conclude as it did. *deCossy* v. *deCossy,* 172 Conn. 202, 205, 374 A.2d 182 (1977). The court concluded that the plaintiff had both a greater estate than the defendant and vocational skills at least equal to his. Under these circumstances, we cannot say that the court abused its discretion.

There is no error.

In this opinion the other judges concurred.

---

[4] The record is rather sparse with respect to exactly what the plaintiff's rights in the plan were. No doubt trial courts would find their task of taking pension rights into consideration much easier, especially when large sums are involved, if evidence were offered showing to what extent the rights are vested and the accrual rate of past and future rights.