[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. The Dissolution of the Marriage
It is found that all of the allegations of defendant's cross-complaint have been proven, that the marriage has broken down irretrievably, and the marriage is ordered dissolved for that reason.
II. The Evaluation of Defendant's Retirement Plan or Pension
The defendant as a state employee contributed to a pension plan which will entitle him to receive certain monthly benefits when he retires, provided he has satisfied certain requirements concerning length of service. The present value of this pension is in dispute.
Joel M. Kosovsky, a C.P.A. who testified on behalf of the defendant, stated that the present value of defendant's future benefits was $94,555, that if defendant had left state employment on July 1, 1991 he would have received $16,804 — his total contributions to the plan, and that as of the date of trial, those contributions amounted to $20,000.
Plaintiff contends in his proposed orders that one half defendant's pension has a value of $51,897, giving it a full value of $103,794 as of date of trial, and holds that this figure should be utilized by the court when determining the total value of the marital estate of the parties.
The dangers involved in employing the present value of an employee's future benefits are aptly set forth in CT Page 10306 Family Law and Practice, Arnold H. Rutkin, General Editor Sec. 46, page 25 where the following is stated: "We caution as to the direct use of the resulting present value amounts as determined by this process. . . . . .A retirement benefit projected in the future will have an actuarial present value associated with it, but its worth to the individual is likely to be less. Not only is the exact value to him uncertain, but the asset is not liquid like a bank account or marketable security. . . . These factors need to be recognized by the court whenever a case involves this type of question."
The court's opinion in this issue is summarized in the holding of the Colorado Court of Appeals in the case of In Re Marriage of Mary A. Camarata Colo. App. 602 P.2d 907
(1979) where the facts were somewhat similar to those herein. In that matter the husband was a retired state employee who had contributed a total of $16,000 to his pension. His contributions would have been paid to him in a lump sum if he terminated his employment prior to his retirement or death. Upon his retirement the amount he contributed would first be paid out to him as retirement benefits. At the time of dissolution $3,400 remained in his account. The wife contended that her husband's entire annuity, including the benefits he would receive during his lifetime, should he considered marital property. On appeal the judgment of the lower court awarding the wife one half of the unspent portion of her husband's contribution to his retirement fund was upheld. The court found the additional benefits were "contingent upon the husband's survival, terminated upon his death, and had no cash surrender value, loan value, lump sum value, or value realizable after death."
The findings of the court in the above matter represent this court's feelings relative to the actual value of defendant's pension on the date of dissolution. For the reasons stated above it is found that the present value of defendant's pension for marital estate purposes is $20,000. Such a finding in no way prohibits this court from otherwise considering defendant's unaccrued pension rights when distributing the marital estate or in awarding alimony, if such were sought. In this regard see Thompson v. Thompson, 183 Conn. 96 (1981).
CT Page 10307 III. The Gross Marital Assets of the Parties
Plaintiff (Wife)
One-half interest in No. 44 Red Coat Lane, Unionville, CT Total value $285,000 Less mortgage 1,500 Total equity $283,500 One half interest $141,750 $141,750 1990 Jeep Wagoneer, Ltd 25,000 1987 Chev. Van 10,000 1990 Chev. Lumina Eurocoupe (1/2) 6,865 Household furniture — Bank Accts. 775 Joint Stock A. G. Edwards (1/2) 18 Joint Stock Grolen, Inc. (1/2) 4,447 Solely Owned Stock 57,224 Advest 112,614 Life Insurance (C.S.V.) 2,650 Advest (I.R.A.) 2,300 Summit Trust 10,000 Additional Assets (Stocks and Notes) 189,306 Personal Notes — TOTAL $562,949
Defendant
One half interest in equity in #44 Red Coat Lane, Unionville, CT $141,750 1990 Chev. Lumina (1/2) 6,865 1988 Seasprite (boat) (1/2) 4,500 Bank Accts. 1,700 Jointly owned stock Grolen, Inc. (1/2) 4,447 Jointly owned stock A. G. Edwards (1/2) 18 Life Insurance (C.S.V.) 3,900 Advest (I.R.A.) 7,400 Retirement Plan 20,000 TOTAL $190,580
TOTAL GROSS MARITAL ESTATE $753,529
IV. The Consideration of Gifts Made by Plaintiff's Father During the Marriage
CT Page 10308 The parties were married in 1973 and in 1976 purchased their present home in Unionville, CT for $52,000. Both of their parents assisted the couple financially at that time, and the extent of their contributions is not an issue. In 1985 plaintiff's father, as part of a program to dispose of his business interests and to reduce prospective estate tax liabilities, gave plaintiff funds totalling about $1,100,000. Some of this amount was expended in improving the family home, some for vacations, automobiles, and children's tuition, some in payment of federal and state gift taxes, with the remainder being invested in various securities recommended by plaintiff's financial adviser. The manner in which both the various securities and the home improvements should be treated when preparing a schedule of the adjust gross marital assets of the parties on hand for distribution are issues to be resolved at this time.
A. The Various Securities
The securities to be discussed are set forth in plaintiff's financial affidavit and are:
 A. G. Edwards $ 57,224 Advest 112,614 Summit 10,000 Additional Assets 189,306 $369,144
The entire portfolio represents the investment by plaintiff's financial adviser of funds given her by her father. All securities stand in plaintiff's name only and, on the evidence, have never been co-mingled with family funds.
"Many states either specifically define gifts as separate property or exclude them from the definition of marital property." On the other hand "Some state specifically list the receipt of gift property as a factor for the court to consider in making an overall award" Golden, Equitable Distribution of Property (1988) 5.24 pp. 118-119. Connecticut is not quite so specific, requiring merely that the court, in distributing the marital estate, consider the contributions of each of the CT Page 10309 parties in its acquisition, preservation, or appreciation in value.
Here, after an examination of the evidence, it is concluded that defendant made no contribution of any nature to these securities, and for that reason their value is not being considered in determining the amount of the adjusted gross marital estate.
B. The Home Improvements
It is clear from the evidence that the home improvements made by plaintiff must not be treated by the court in the same manner as the various securities purchased by her. The evidence indicates that during a fourteen month period commencing about a year after receiving the monetary gift from her father plaintiff expended $306,339.22 for indoor and outdoor additions and improvements to the family home as well as for drapes and furniture. Much of this was done over the objection of defendant who felt, and correctly as it developed, that these extensive expenditures would not result in a proportionate increase in the value of their home. His suggestion that the funds be more wisely spent on a vacation home for the family went unheeded. Expert testimony from a real estate appraiser indicated that the home is presently worth $285,000, that its value without the improvements would be $168,000, and that the added improvements have a present value of $117,000.
In her testimony plaintiff stated that the money expended for home improvements came both from the income from her securities and from the sale of a portion of them in a proportion she was unable to estimate. From the evidence it is noted that all of the improvements were made in a relatively short span of time, fifteen months during 1986 and 1987, that the federal tax returns of the parties reflect interest in the amount of about $68,000 in 1986 and $41,000 in 1987 and that the total expenditure for improvements exceeded $300,000. From this it can be safely concluded that at least 50 per cent of the expenditures can be traced to sale of capital assets, with the balance coming from income. On the evidence, and with a more accurate accounting for the source of the funds so expended lacking, it is found that the expenditures at CT Page 10310 issue came equally from income from the securities and from the sale of a portion of them.
Turning next to the application of the appropriate law to the above conclusion of the court, the following comment is noted:
"Whether the returns on separate property are characterized as marital or non-marital can hinge upon whether these returns are income from as opposed to appreciation in value of the separate property. Income will typically be classified as marital, while increase in value may not. Family Law and Practice Arnold H. Rutkin, General Editor Vol. 3 3704[6].
Of equal interest is the case of MacDonald v. MacDonald532 A.2d 1064 (Me. 1987) p. 1049. In that matter a state statute made it clear that property acquired by gift was non-marital, but was silent as to whether income from this property was also non-marital. In holding that such income should be considered part of the marital estate the court stated "We also note that a majority of states follow this view, that income during the marriage from separate property is part of the marital estate."
This court concurs with the holding in MacDonald (supra) deeming that the fruits of income expended for family purposes, including improvements to jointly owned home, should be treated as part of the marital estate, whether their source was income from employment or income from a non-marital gift.
Having reached this conclusion and being mindful that the present value of the added improvements to the family home is $117,000, it is found that half the improvements or $58,500 should be included in the present value of the dwelling. Its present value without improvements being $168,000, it is concluded that its value at this time as part of the adjusted marital estate is $168,000 plus $58,500 or $226,500.
V. The Determination of the Value of the Adjusted Gross Marital Estate
Plaintiff (Wife)
CT Page 10311 One-half interest in No. 44 Red Coat Lane, Unionville, CT Total adjusted value $226,500 Less mortgage 1,500 Total equity $225,000 One half interest $112,500 $112,500 1990 Jeep Wagoneer, Ltd 25,000 1987 Chev. Van 10,000 1990 Chev. Lumina Eurocoupe (1/2) 6,865 Household furniture — Bank Accts. 775 Joint Stock A. G. Edwards (1/2) 18 Joint Stock Grolen, Inc. (1/2) 4,447 Life Insurance (C.S.V.) 2,650 Advest (I.R.A.) 2,300 TOTAL $164,555
Defendant
One half interest in equity in #44 Red Coat Lane, Unionville, CT $112,500 1990 Chev. Lumina (1/2) 6,865 1988 Seasprite (boat) (1/2) 4,500 Bank Accts. 1,700 Jointly owned stock Grolen, Inc. (1/2) 4,447 Jointly owned stock A. G. Edwards (1/2) 18 Life Insurance (C.S.V.) 3,900 Advest (I.R.A.) 7,400 Retirement Plan 20,000 TOTAL $161,330
 TOTAL ADJUSTED GROSS MARITAL ESTATE $325,885
VI. The Evaluation of the Evidence in Accordance with the Provisions of Sec. 46b-81C C.G.S.
The plaintiff wife who is 41 years of age, and the defendant husband, who is 42, were married on August 18, 1973 — nineteen years ago. There are two minor children issue of their marriage, Kevin, who is 15 years old and Christopher, who is 11. The defendant graduated from Susquehanna University in 1972 and the plaintiff from Ithaca College in 1973, where she received a B.A. degree. She is an accomplished flutist. At the time of their CT Page 10312 marriage plaintiff was employed in the business office of the State Bank for Savings and defendant in the state department of corrections. Prior to the birth of their first child plaintiff ceased full time employment, devoting all her time thereafter to the usual duties of a wife and mother. At that time the parties purchased their present home in Unionville, Ct. The defendant has continue to advance in his employment and is presently with the department of mental retardation in Farmington. Both parties are in apparent good health.
In 1985, as previously mentioned, plaintiff received a gift of about $1,100,000 from her family which resulted among other things in the home improvements and additions earlier commented upon. Defendant was then able to take a larger personal allowance from his weekly salary and to save $9,000 which was used in part to purchase a half interest in a boat. The parental gift also enabled the couple to provide hockey lessons for their children, trips out of state to athletic events in which the children were involved, and tuition at a prestigious private school for Kevin. With the exception of the fruits of plaintiff's parents' generosity previously considered in Article IV (supra) the parties have contributed equally in the acquisition, preservation or appreciation in value of the adjusted gross marital estate. The vocational skills and employability of defendant exceed those of plaintiff. Their opportunities for the future acquisition of capital assets and income are about equal.
Fault
The parties were separated for a period of two months in 1978. The problem at that time, according to defendant, was his desire to "do things on my own — to have some time to myself." The parties agreed to do more things together, that plaintiff would be more lenient, and life together was resumed. Defendant permanently left the family home in September, 1990. The reasons expressed by the parties for the breakdown of their marriage are set forth at this time in the order in which they testified. Defendant
"After 1985 things deteriorated — she became very CT Page 10313 domineering. I resented this. She became very condescending after receiving the gift from her father. She bought season tickets to the Whalers — I felt belittled by the whole thing. She wouldn't hire a cleaning woman. In 1988 I suggested marriage counselling but she declined, saying it wouldn't help. Later, in 1990, I attended three divorce counselling sessions, feeling that the marriage had by then irretrievably broken down. On several occasions since the separation she has asked me to return to the family home, but I have refused. After the separation I began dating a fellow employee whom I had worked with since 1983. This relationship has continued to this time."
Plaintiff
"For the first ten years we had a good strong marriage. I tried to work on it. Later he wanted to spend more time on his own. At times he'd spend the entire weekend on his boat while I'd be home with the children. He told me no women were allowed on the boat, but I later learned his co-owner's wife spent time on it. He wanted his freedom, saying I was an embarassment to be with. I just wanted equal time, but he'd never give it to me. I once had to cancel a trip to Disneyland after having arranged for plane tickets and hotel reservations because he refused to go. He once said `I don't need a wife — just a maid.' In the past seven years he has not invited me to the annual Christmas party at work. Toward the end of our married life together his suggestion that we have separate bedrooms was adopted. Shortly before the final separation, after I had thanked him for taking me to the hospital for medical attention, he said `Don't get any big ideas — I'd do it for anyone.'
After sifting through and weighing all the evidence it is found that fault for the breakdown of the marriage rests with the defendant.
In summary, the court has considered all of the provisions of Sec. 46b-81c C.G.S., has determined that the predominating factors are the length of the marriage, plaintiff's lesser skills and employability, and defendant's responsibility for the breakdown of the marriage. It concludes that the adjusted gross marital CT Page 10314 estate of the parties should be divided in the following manner:
 Plaintiff 55% Defendant 45%
VII. The Distribution of the Adjusted Gross Marital Estate
TOTAL ESTATE $325,885
Plaintiff (Wife) — 55% — $179,237 Total equity in real estate at No. 44 Red Coat Lane, Unionville, CT $225,000 1990 Jeep Wagoneer, Ltd 25,000 Household furniture — Bank Accts. 775 A. G. Edwards (1/2) 36 Life Insurance (C.S.V.) 2,650 Advest (I.R.A.) 2,300 1987 Chev. Van 10,000 TOTAL $265,761 Less amount due Plaintiff 179,237 Due defendant 86,524
Defendant (husband) — 45% — $146,648 1990 Chev. Lumina 13,730 1988 Seasprite (boat) (1/2) 4,500 Bank Accts. 1,700 Grolen, Inc. (1/2) 8,894 Life Insurance (C.S.V.) 3,900 Retirement Plan 20,000 Advest (I.R.A.) 7,400 TOTAL $60,124 Plus amount due from Plaintiff 86,524 $146,648
VIII. Supplemental Orders Concerning the Distribution of the Adjusted Gross Marital Estate
A. Defendant will quitclaim all of his interest in No. 44 Red Coat Lane, Unionville Ct. to plaintiff who in turn will hold defendant harmless with regard to the mortgage and any other incumbrances on said premises. CT Page 10315
B. Plaintiff will execute her promissory note to defendant in the amount of $86,524, which note shall bear interest at the rate of four per cent per annum, shall be secured by a mortgage on the marital home, and shall be due and payable at the earliest to occur of the following events:
1. The death of the plaintiff.
2. The remarriage of the plaintiff.
3. The sale of the premises.
 4. The failure of the plaintiff to use the mortgaged premises as her principal place of abode.
5. October 26, 1998.
C. The court understands that the parties have for the most part divided the household furniture to their mutual satisfaction. The remaining items in dispute are distributed as follows:
Plaintiff
1. All formal silverware
2. Hutch
3. Chairs
4. End tables and lamps
Defendant
1. A V.C.R. of his choice
2. Desk
3. Bureau
D. Each of the parties will execute all documents necessary to carry out the orders of this court. CT Page 10316
IX. Orders Concerning The Minor Children
A) The parties shall have joint custody of the two minor children with primary physical custody in the plaintiff. The parties shall consult with each other concerning the health, education and general upbringing of the children, but if a dispute shall arise, the decision of the plaintiff shall be final.
B) The defendant shall have reasonable rights of visitation including but not limited to the following:
 1. Every other weekend from 5:00 p.m. on Friday until 8:00 p.m. on Sunday.
2. Each Wednesday from 5:00 p.m. until 9:00 p.m.
 3. Two weeks of visitation in the summer to take place during the period between June 25th and August 31st. Defendant shall notify plaintiff no less than sixty days prior to such visitation of his intent to exercise the same.
 4. Commencing with the defendant, the parties shall alternate visitation during the following holidays: Christmas Eve Christmas Day New Year's Day President's Day Easter Memorial Day Labor Day
 5. Visitation with the minor children during the Memorial Day and Labor Day holidays shall include the preceding weekend, resulting in three continuous days of visitation.
 6. During one of the following three vacation period i.e. Christmas, February, or Spring, defendant shall have visitation with the minor children for a period of three days providing CT Page 10317 he gives plaintiff 30 days notice of his intent to exercise such visitation.
 7. Emergency telephone numbers of the parties are to be made mutually available at all times.
C) The defendant is ordered to pay plaintiff as support the sum of $125 per week for each of the two minor children for a total of $250 per week. In thus making permanent a similar temporary order to which the parties stipulated on April 3, 1991 when defendant had a substantially similar income, the court has considered that plaintiff has considerably more assets than does defendant.
D) Defendant is indebted to plaintiff in the amount of $728 representing his share of unreimbursed medical bills of the children and other items. Defendant shall pay said sum to plaintiff within 45 days of his receipt of medical bills reflecting his responsibility for said amount.
E) Defendant shall maintain Blue Cross and Blue Shield major medical and dental insurance or its equivalent as the same is available at his place of employment for the benefit of the minor children. The parties shall share equally all unreimbursed medical, dental, ophthalmological, orthodontic, or pharmaceutical expenses. The provisions of Sec. 46b-84c C.G.S. shall apply.
F) The defendant shall be entitled to take his minor son Kevin as an exemption on his federal and state income tax returns.
G) The defendant shall continue to maintain his present life insurance policies during the minority of his children with said children as irrevocable beneficiaries.
H) The parties shall exchange state and federal income tax returns annually commencing April 15, 1993.
X. Other Orders
A. No award of alimony is made to either party.
B. Defendant shall continue to maintain plaintiff on his CT Page 10318 present health policy for the maximum period prescribed by law at his cost and expense.
C. No award of counsel fees is made to either party.
D. Plaintiff is indebted to defendant in the amount of $5,765 representing the balance of his share of federal and state income tax rebates for 1991. Said sum shall be paid to defendant within 60 days from date hereof.
BY THE COURT,
John D. Brennan State Trial Referee