[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage. On the return date the parties had been married just over ten years. They have two daughters, ages eight and ten.
Mrs. Benson is 32 years old; Mr. Benson, 37. Neither has any serious health problems. Throughout the marriage Mr. Benson has been the principal, if not the sole, wage earner while Mrs. Benson has taken care of their home and children. Their assumption of these roles has resulted in Mr. Benson's having an CT Page 6359 earning capacity far superior to Mrs. Benson's at the present time. He is employed full-time as a police officer and grosses about $1,000 per week, netting $760 after taxes and other mandatory deductions.
Mrs. Benson has only recently begun working part-time at a day care center where she has a net weekly income of $115, supplemented by rent she receives from her brother and a live-in boyfriend of approximately $73 each week.
There are several properties in Waterbury owned by the parties jointly or by Mr. Benson, all of which were purchased during the marriage. Altogether the equity in these properties does not exceed $27,000, and the parties are not in dispute as to their disposition. In addition, Mr. Benson, while not the record owner at the present time, has a beneficial interest in a property in Maine, which was assessed in 1994 at $67,400. Mr. Benson was the owner of record until 1996 when he transferred ownership to his "godfather", who resides there six months out of the year. In the past two years Mr. Benson has made substantial expenditures for improvements and repairs to that property.
Through the police department Mr. Benson has a pension which, at the time of trial, consisted of his contributions of $27,000 plus interest; it will not vest until the middle of 1998. In addition, he has deferred compensation in the approximate amount of $6,700. Among the parties' other assets are a tax refund and the proceeds of a lawsuit settled on Mr. Benson's behalf, all of which are being held in escrow, and which total approximately $14,600. Mr. Benson has another lawsuit pending, arising out of an accident which occurred since the parties have separated, and he shows on his financial affidavit amounts owed to him by various persons in the approximate amount of $4,000. All of the parties' assets, including the Maine property, total just over $175,000.
The court has considered all of the criteria of Sections46b-62, 46b-81, 46b-82 and 46b-84 of the General Statutes, together with the applicable case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account",Scherr v. Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as CT Page 6360 stated subsequently in this memorandum. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman, 188 Conn. 232, 234 (1982). Suffice it to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v. Leo, 197 Conn. 1, 5 (1985), and need not give equal weight to each factor. Kane v. Parry,24 Conn. App. 307, 313-14 (1991).
Generally speaking, the parties are at issue over Mr. Benson's continuing obligation to support Mrs. Benson and the equitable distribution of their accumulated property. As usual, the court heard copious testimony from both parties as to the causes of the breakdown of their marriage. Based on that testimony and the reasonable inferences to be drawn from it, the cause of the breakdown seems clearly to have been Mr. Benson's relationships with several other women during the marriage. While it is not clear that all of these relationships were adulterous in nature, statements made by Mr. Benson in the presence of Mrs. Benson and another clearly indicate that at least one of them was. Furthermore, despite Mrs. Benson's repeated protestations that the time Mr. Benson was spending with these women was detracting from the time he could spend with her and the children, he made little, if any, effort to rein in his propensity for these relationships. While it is a truism that both parties are responsible for any marriage's breakdown, none of the testimony the court heard indicated how Mrs. Benson might have made a contribution.
Nevertheless, the application of the statutory factors to the evidence does not support many of the requests made by Mrs. Benson for financial orders, for the reasons indicated below.
Clearly, Mrs. Benson and the children have a continuing need for financial support from Mr. Benson. He has been steadily employed throughout the marriage, provided well for his family and has a well-developed earning capacity. Besides his full-time employment as a police officer, Mr. Benson is a college graduate with experience in teaching and construction. No evidence was adduced, however, to indicate specifically how these accomplishments and aptitudes would increase his earning capacity. In the absence of such evidence, the court cannot consider these potential earnings in establishing its financial orders. Schmidt v. Schmidt, 180 Conn. 184, 190-91 (1980). CT Page 6361
On the other hand, Mrs. Benson's devotion of her time to caring for the parties' home and children has left her with little employability, little earning capacity. In addition, her efforts at home have contributed to Mr. Benson's economic achievements by leaving him free to remain steadily employed and to purchase and at least partially renovate several income producing properties. See K. Silbaugh, "Turning Labor into Love: Housework and the Law", 91 Northwestern U. L. Rev. 1, 17-21, 57-58, 64-67 (1996).
The result is that Mrs. Benson remains and will remain dependent upon Mr. Benson for financial support until she can develop an independent earning capacity. The court's orders concerning alimony and child support will reflect that reality. Those orders will be based upon Mr. Benson's earnings as a police officer during 1996. In previous years he has worked considerably more overtime and extra duty than in 1996, but the court is satisfied that the reduction in his hours during 1996 was not a deliberate attempt to minimize income; rather, they were primarily due to changes in the police department's staffing. Based on those earnings, as well as Mrs. Benson's income at the time of trial, the court finds that the guidelines child support amount is $260 weekly.
Testimony at trial showed that Mrs. Benson has a live-in boyfriend who pays her $50 a week in rent. That rental payment has been included in her income for purposes of computing the child support amount due from Mr. Benson and her need for alimony. Mr. Benson appears to argue, however, that the court should consider the availability to Mrs. Benson of additional financial contributions from her boyfriend in computing her need for alimony from Mr. Benson.
It is correct to say that Supreme Court decisions have allowed courts to consider, in making financial awards, contributions to a party's support when there has been a "long-standing custom", Scherr v. Scherr, 183 Conn. 366, 368 (1981), or a "history", McGinn v. McGinn, 183 Conn. 512, 513 (1981), of such contributions. See also Askinazi v. Askinazi,34 Conn. App. 328, 343 (1994). In this case, although the boyfriend and Mrs. Benson have lived together for about a year, the only "history" established by the evidence is of his $50 a week in "rent". This has remained true even though the boyfriend's income has substantially increased during that period. For the court to impute to Mrs. Benson any income beyond that established CT Page 6362 by the record would be speculative; therefore, in figuring her need for alimony at this time the court will consider as income only the $50 weekly payments she is receiving from her boyfriend.
Even after receipt of child support in the guidelines amount from Mr. Benson, Mrs. Benson has a continuing need for support that Mr. Benson's present income allows him to fulfill. Comparing the parties' net weekly income from all sources and considering Mrs. Benson's reasonable and necessary weekly expenses, as well as the tax consequences of an alimony order, the court finds that the weekly alimony amount proposed by Mr. Benson is a reasonable contribution toward Mrs. Benson's continuing need for support.
Equitably distributing the parties' assets raises several issues; e.g., Mr. Benson's beneficial interest in the Maine property, the status of Mr. Benson's non-vested pension benefits and their transferability and the effect of Mr. Benson's depositing substantial funds in the names of the parties' children. Moreover, Mr. Benson's opportunity to acquire property in the future is considerably greater than Mrs. Benson's due to his superior earning capacity, his apparent aptitude for acquiring and managing property and his interest in a property worth over $60,000 in Maine.
With regard to the Maine property, as indicated above, until 1996 the property had been in Mr. Benson's name for several years. In that year, after this action was begun and upon his attorney's advice[1], he transferred ownership to his "godfather", a man who raised him since he was a boy, and who presently resides on the property for part of each year. Since the property is located outside the state, and Mr. Benson is not the record owner, the court's options are limited. The court has no question that that property will sooner or later devolve to Mr. Benson, giving him the benefit of a substantial asset. Likewise, the court has no question that Mr. Benson transferred ownership in an attempt to remove the property from the marital estate and deny Mrs. Benson any share in it. The court will, based on these findings, include the value of that property, based on its assessment in 1994, as an asset of Mr. Benson's in distributing the other assets of the parties.
Mr. Benson has been contributing to a pension plan for the 8 1/2 years he has been a police officer. His benefits, however, CT Page 6363 will not vest for another year. Vested pension benefits are indisputably "property" subject to distribution under § 46b-81 of the General Statutes. Krafick v. Krafick, 234 Conn. 783, 798
(1995). Although the Court in Krafick did not reach the classification of non-vested benefits, it noted "that the same reasoning has been applied [by other courts] to find that such benefits also, as an initial matter, constitute property". Id., 798 n. 23. Moreover, as early as 1981, the court concluded "that such [non-vested pension] interests were not too speculative to be taken into account in some fashion by the trial court in crafting its financial orders in a dissolution action". Id., 794 n. 20, citing Thompson v. Thompson, 183 Conn. 96, 100-101
(1981).
It seems to this court that, like vested pension benefits, non-vested pension benefits are a valuable item of property subject to distribution at the time of the dissolution of the parties' marriage. They are "a form of deferred compensation for services rendered", Thompson v. Thompson, supra, 100, accumulated by Mr. Benson during the term of the parties' marriage. It would be inequitable to deprive Mrs. Benson of any share in that accumulation, and the court does not understand Mr. Benson to be suggesting that. The issue then becomes one of valuation, and Mrs. Benson introduced testimony from a pension actuary, attaching a substantial discounted value to Mr. Benson's non-vested pension interests. The court rejects that approach as too speculative in view of the fact that Mr. Benson must work another year as a police officer before his benefits are vested and in view of the many imponderables that may occur between now and when he can collect any benefits, if it does vest. Rather, the court finds that Mrs. Benson is entitled to one-half of the presently accrued sum in Mr. Benson's pension account, plus interest, as of May 1, 1997. Mr. Benson shall transfer so much of his interest to Mrs. Benson by way of a domestic relations order, and, if such an order cannot be implemented for any reason, then he should pay directly to the plaintiff one-half of his pension benefits at such time as he begins to receive them until her share is paid in full. Should he remove funds from the account after vesting and prior to retirement, he must pay Mrs. Benson her presently-computed interest at that time. The court's orders will reflect this disposition of Mr. Benson's pension benefits.
During the early part of 1995, when the parties' marriage was clearly on a downhill slope, Mr. Benson transferred CT Page 6364 significant sums of money from accounts in his name or in the joint names of the parties to savings accounts, mutual funds and certificates of deposit in the names of the parties' children and Mr. Benson's niece by marriage. At the time of trial these accounts held over $28,000. Two of these accounts had already been in existence as savings accounts for the parties' children, but no plausible explanation was offered by Mr. Benson at trial for augmenting those accounts or creating the mutual funds and certificates of deposit. The court concludes that Mr. Benson's reason for transferring these funds into the names of his children and his niece by marriage was to remove them from the marital estate and place them out of the reach of Mrs. Benson should the parties divorce.[2] Accordingly, the court will consider these accounts in toto as part of the marital estate and will distribute them in such a way as to effect an equitable distribution. See Watson v. Watson, 221 Conn. 698, 708-09
(1992).
In addition, Mrs. Benson is clearly entitled to one-half of the balance in Mr. Benson's deferred compensation accounts, both the Vanguard mutual fund and the Pebsco account. Since there is a serious question whether a portion of either of these funds can be assigned to Mrs. Benson, her share will be taken out of the funds held in escrow as the proceeds of Mr. Benson's settlement of a lawsuit.
In order to further balance the distribution of property Mrs. Benson will receive the entire tax refund now held in escrow and a share in the present equity of the parties' Knoll Street property at such time as it is sold.
The court entered a judgment of dissolution on March 14, 1997 at the close of all the evidence. At that time the necessary jurisdictional findings were made. Based on those findings, as well as the court's consideration of the testimony and exhibits introduced at trial, its observation of the witnesses and assessment of their credibility, the court enters the following orders:
 1. The defendant shall pay to the plaintiff by way of child support $260 weekly and by way of alimony $65 weekly. The defendant's obligation to pay alimony shall continue until the death of the plaintiff or the defendant or the remarriage of the plaintiff but in no event shall continue beyond ten years from the date of CT Page 6365 dissolution.
 2. The defendant shall name the plaintiff as primary irrevocable beneficiary of all life insurance made available to him through his employer at no cost for as long as he is obligated to pay alimony or child support to the plaintiff. The minor children shall be designated as the secondary beneficiaries until the younger child reaches the age of 18. The defendant shall provide annual documentation that this insurance is in effect, and that the plaintiff and the minor children continue to be designated beneficiaries. Should the defendant leave his employ with the City of Waterbury and thereby lose this insurance, he shall provide life insurance in the same amount at his sole expense.
 3. The defendant shall maintain comprehensive medical insurance for the benefit of the minor children as is available to him through his employment. The parties shall share equally all uninsured or unreimbursed medical expenses. The provisions of § 46b-84 (d) of the General Statutes are incorporated herein by reference. The defendant shall cooperate in making available to the plaintiff medical insurance under COBRA for the maximum allowable period at the plaintiff's sole expense.
 4. The defendant shall have the tax exemption for both children for 1996. In subsequent years the defendant shall have the tax exemption for the older child, and the plaintiff shall have the exemption for the younger child. This provision is modifiable if there is a substantial change in the respective incomes of the parties so that the tax effects of the allocation of these exemptions are substantially changed.
 5. The defendant shall convey all of his right, title and interest in a single family home located at 111 Twining Street, Waterbury, to the plaintiff, and the plaintiff shall be responsible for all mortgage payments, taxes and any other charges related to said real estate accruing after the date of the dissolution of the marriage, and she shall indemnify and save the defendant harmless therefrom. CT Page 6366
 The plaintiff shall transfer all of her right, title and interest in properties located at 89-91 Alma Street, 106 Knoll Street and 242 Fairlawn Avenue, all in Waterbury, to the defendant, and the defendant shall be responsible for all outstanding and future amounts due for mortgages, taxes, liens and any other expenses related to said real estate, and he shall indemnify and save the plaintiff harmless therefrom. Upon the transfer by the plaintiff of her interest in the Knoll Street property, the defendant shall provide her with a non-interest bearing note in the amount of $6,375, which the court finds to be 50% of the present equity in that property. Said note is payable on the sale or refinancing of that property.
 6. The defendant shall retain his Pebsco and Vanguard accounts, but he shall pay one-half of their value as of May 1, 1997 to the plaintiff out of the funds being held in escrow as a result of the settlement of his previous lawsuit. The defendant shall have the remainder of the funds in that escrow account.
 7. By way of a domestic relations order or some other method designed to minimize or eliminate taxes for the parties, including the direct withdrawal and transfer of funds from the account, the defendant shall transfer to the plaintiff one-half of the balance in his pension account as of May 1, 1997, plus interest earned to that date, within 120 days of the date of dissolution. The court retains jurisdiction to enforce the provisions of this order or to enter alternative orders to carry the court's intent into effect.
 8. The defendant, within 90 days of the date of dissolution, shall liquidate all of the certificates of deposit, mutual funds and bank accounts in the names of the parties' minor children and niece and pay the amount on deposit in those accounts, not to exceed $30,000, to the plaintiff. Should any of those accounts not be liquid until a date in the future, the defendant shall forthwith transfer ownership of those accounts from his name to that of the plaintiff.
CT Page 6367
 9. The plaintiff shall have the tax return currently being held in escrow. The defendant shall retain the accounts receivable shown on his financial affidavit at the time of trial.
 10. The plaintiff shall have no claim to the pending personal injury claim of the defendant.
 11. The plaintiff shall retain all the automobiles presently in her name, and she shall hold the defendant harmless from any and all expenses related to those vehicles, including any taxes due. The defendant shall retain all the automobiles presently in his name, and he shall hold the plaintiff harmless from any and all expenses related to those vehicles, including any taxes due.
 12. Each party shall pay the liabilities shown on her and his respective financial affidavits submitted at trial and shall indemnify and save the other party harmless from any liability thereon, except that the defendant shall pay $2,500 as a contribution to the plaintiff's counsel fees within 120 days of the date of dissolution.
SHORTALL, J.