Julie Bowers SCHWAB

v.

Walter B. SCHWAB.

No. 2007–163–Appeal.

Supreme Court of Rhode Island.

April 7, 2008.

William J. Lynch, Esq., Providence, for Plaintiff.

Louis M. Pulner, Esq., for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice FLAHERTY, for the Court.

The defendant Walter B. Schwab (Walter) appeals from a Family Court order denying his motion to set aside a judgment of divorce (judgment) and marital settlement agreement (agreement) [1] for lack of enforceability as a matter of law. The parties appeared for oral argument on March 10, 2008, pursuant to an order of this Court to show cause why the issues raised in this appeal should not summarily

1. The agreement was incorporated by refer-    ence, but not merged with the judgment.

be decided without further briefing or argument. After considering the record, the memoranda submitted by the parties, and the oral arguments advanced by each, we are of the opinion that cause has not been shown and that the case should be decided at this time. For the reasons set forth herein, we affirm the order of the Family Court.

## Facts and Procedural History

On June 29, 1984, the Connecticut Superior Court entered a judgment that dissolved the marriage of Walter and plaintiff Julie Bowers Schwab (Julie) and, on that same day, the parties voluntarily executed the agreement. The agreement, as well as the judgment, provided for periodic alimony payments by Walter to Julie.[2] Under the agreement, Walter was required to pay Julie $125 each week until one of them died or Julie remarried. Significantly, the alimony payments would increase to $700 a week after the death of Walter's mother, at which time Walter would receive his share of a testamentary trust established under the will of his late grandfather.[3] The agreement also provided for further escalations of alimony depending upon the Consumer Price Index. The agreement said that the alimony payments "shall not be subject to any reduction," and provided that the agreement "be construed and governed in accordance with the laws of the State of Connecticut."

After his mother died, Walter initially honored the judgment and agreement, and he increased his alimony payments to Julie. When Walter later refused to comply with the alimony provisions, however, Julie filed motions in the Rhode Island Family Court[4] for specific performance, to adjudge Walter in willful contempt, for counsel fees, and for sanctions. In response, Walter moved to set aside the judgment and agreement for lack of enforceability. A trial justice subsequently determined, *sua sponte*, that the Family Court did not have jurisdiction to address Walter's motion. On appeal, we held otherwise and remanded the matter back to the trial court. *See Schwab v. Schwab*, 897 A.2d 37, 39 (R.I.2006).

On March 23, 2006, a Family Court trial justice issued a decision denying Walter's motion. After reviewing Connecticut law, she concluded that although courts were not permitted to fashion alimony awards based on mere expectancies of future inheritance, they were permitted to do so when the only contingency for the inheritance was the survival of the beneficiary. Because the trial justice found that Walter need only survive his mother to be eligible for his share of his grandfather's trust, she found that the increase in alimony payments was permissible, and that the judgment and agreement, therefore, were enforceable under Connecticut law. The trial justice entered an order on April 5, 2007, in accordance with this decision.

Walter timely appealed the denial of his motion to this Court. On appeal, he ar-

2. Because the content of the agreement mirrors that of the judgment, we refer only to the language in the agreement throughout this opinion.

3. Paragraph 5 of the agreement provides in relevant part:
   "The Husband is a beneficiary of various trusts established by members of his family, including a testamentary trust established under the Will of his late grandfather, Wal-

ter Bliss (hereinafter referred to as the 'Bliss Trust').
   "Upon the death of his mother, the Husband shall use his best efforts to expedite the distribution to him of his share of the Bliss Trust in order to insure the immediate increased support of the Wife hereinafter described."

4. Subsequent to his divorce, Walter had moved to Rhode Island.

gues that the judgment and agreement are unenforceable as a matter of law because they provided for an increase in his alimony obligations based upon the mere expectation of inheritance. Julie counters that (1) this Court cannot change the alimony payments because of the language in the judgment and agreement prohibiting modification, and (2) the doctrine of laches bars Walter from seeking relief.

## Standard of Review

■■■ When hearing an appeal from the Family Court, we have said that "it is not our function to arrive at de novo findings and conclusions of fact based on the evidence presented at trial." *Moran v. Moran,* 612 A.2d 26, 33–34 (R.I.1992) (quoting *Casey v. Casey,* 494 A.2d 80, 82 (R.I.1985)). "We do not disturb the trial justice's findings of fact unless it can be shown that he or she has overlooked or misconceived relevant and material evidence or was otherwise clearly wrong." *Oduyingbo v. Oduyingbo,* 685 A.2d 280, 280 (R.I.1996) (mem.) (citing *Duke v. Duke,* 510 A.2d 430, 432 (R.I.1986)). However, when reviewing questions of law and statutory interpretation in such appeals, we must apply a *de novo* review. *See*

*Gorman v. Gorman,* 883 A.2d 732, 738 n. 8 (R.I.2005) (citing *Rhode Island Depositors Economic Protection Corp. v. Bowen Court Associates,* 763 A.2d 1005, 1007 (R.I. 2001)).

## Analysis

■■■ Although Connecticut General Statutes § 46b–82 [5] authorizes courts to order alimony upon the dissolution of a marriage, the Connecticut Supreme Court has held that there is no absolute right to alimony. *See Valante v. Valante,* 180 Conn. 528, 429 A.2d 964, 966 (1980). The Court further has held that decisions to award alimony are within the sound discretion of the trial court. *See Posada v. Posada,* 179 Conn. 568, 427 A.2d 406, 408 (1980). When awarding alimony, Connecticut courts must consider the length of the marriage and the causes for its dissolution, as well the age, health, station in life, occupation, amount and sources of income, and assets of each party. *See* § 46b–82.

The Connecticut Supreme Court repeatedly has said that when courts determine alimony awards, under § 46b–82, or property distribution, under Conn. Gen. Stat. § 46b–81, [6] they may not consider

5. Connecticut General Statutes § 46b–82 says in relevant part:

   "(a) At the time of entering the decree, the Superior Court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b–81. The order may direct that security be given therefor on such terms as the court may deem desirable, including an order pursuant to subsection (b) of this section or an order to either party to contract with a third party for periodic payments or payments contingent on a life to the other party. The court may order that a party obtain life insurance as such security unless such party proves, by a preponderance of the evidence, that such insurance is not available to such party, such party is unable to pay the cost of such insurance or such party is uninsurable. In determining

whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b–51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b–81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

6. Section 46b–81 of the Connecticut General Statutes provides in relevant part:

   "(a) At the time of entering a decree annulling or dissolving a marriage or for legal

property interests that are so speculative as to .constitute mere expectancies.[7] *See Rubin v. Rubin,* 204 Conn. 224, 527 A.2d 1184, 1190 (1987); *Krause v. Krause,* 174 Conn. 361, 387 A.2d 548, 550 (1978). The Court has defined "expectancy" as an "interest of a person who merely foresees that he might receive a future beneficence." *Krafick v. Krafick,* 234 Conn. 783, 663 A.2d 365, 372 (1995) (quoting *In re Marriage of Brown,* 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561, 565 (1976)).

Using this rubric, the Connecticut Supreme Court has determined that courts *cannot* fashion alimony awards and property distribution on the basis of a mere expectation of an individual's inheriting from a will or revocable trust. *See Rubin,* 527 A.2d at 1186; *Krause,* 387 A.2d at 550. In *Rubin,* 527 A.2d at 1186, the appellant husband appealed from an order requiring him to pay his wife a share of assets that he may receive from his mother's will and on the termination of a revocable *inter vivos* trust created by his mother. The Court held that this could not be sustained as an award of alimony under § 46b–82 because "[t]he expectancy may never be realized because of diminution of the donor's wealth or a change in the planned disposition of his property." *Rubin,* 527 A.2d at 1189. The Court explicitly said that "[a] periodic alimony order * * * should not be premised upon predictions as to future income that depend wholly upon the generosity of others for realization." *Id.* at 1191.

The Connecticut Supreme Court addressed a similar issue in *Krause,* 387 A.2d at 550, when the husband appellant argued that the trial court should have considered his ex-wife's potential inheritance from her mother in determining her net worth for purposes of property distribution. The Court disagreed, holding that even though the wife was named as a beneficiary in her mother's will, her inheritance was too speculative to be considered. *Id.* The Court said, " '[e]xpectancy' is the bare hope of succession to the property of another, such as may be entertained by an heir apparent. Such a hope is inchoate. It has no attribute of property, and the interest to which it relates is at the time nonexistent and may never exist." *Id.* (quoting *Johnson v. Breeding,* 136 Tenn. 528, 190 S.W. 545, 545 (1916)).

In contrast, the Connecticut Supreme Court has permitted courts to consider future property interests when the only contingency to receiving the property was the survival of the beneficiary to a specific age and where the contingencies were readily quantifiable. *See Bender v. Bender,* 258 Conn. 733, 785 A.2d 197, 210 (2001); *Krafick,* 663 A.2d at 372–73; *Thompson v. Thompson,* 183 Conn. 96, 438 A.2d 839, 841 (1981). In *Krafick,* 663 A.2d at 372, the Court held that vested pension benefits were not mere expectancies and were eligible for property distribution because they represented employees' rights to receive payments in the future, contingent only on their living until the age of retirement.

---

separation pursuant to a complaint under section 46b–45, the superior court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect."

7. Although we acknowledge that alimony and property distribution are distinct concepts, the types of property that can be considered when fashioning alimony awards also are the types of property that are eligible for equitable distribution.

In *Thompson*, 438 A.2d at 841, the Court held that *unvested* pension benefits also were eligible for equitable distribution. *See also Bender*, 785 A.2d at 210. The Court reasoned that although the exact amount of the benefits depended on whether the employee survived to his retirement age, how long he lived after retirement, and his compensation, such contingencies were "susceptible to reasonably accurate quantification." *Thompson*, 438 A.2d at 841. Drawing a specific distinction between these benefits and potential inheritance under a will, the Court said:

"The present value of a pension benefit may be arrived at by using generally accepted actuarial principles to discount for mortality, interest and the probability of the employee remaining with the employer until retirement age. In contrast, the present value of a potential inheritance is extremely difficult to calculate, largely because of the unquantifiable aspects of human nature which often cause wills to be revised." *Id.*

Based on this case law, and our review of the record below, we hold that the judgment and agreement are enforceable as a matter of law because the inheritance upon which the increase in alimony payments was based was not so speculative as to constitute a mere expectancy. Neither party provided us with a copy of Walter's grandfather's trust, so we accept the trial justice's findings of fact with respect to its provisions. The trial justice characterized the trust:

"In the case at hand, Mr. Schwab was a beneficiary under a testamentary trust created by his deceased grandfather, Walter Bliss. There was no opportunity for Mr. Bliss to change the beneficiaries of the trust. There was no issue re: distribution of the proceeds of same in that the Property Settlement Agreement directs Mr. Schwab to use his best efforts to effectuate the timely distribution of his share of the Bliss Trust. *Mr. Schwab need only survive his mother to be eligible for his share.*" (Emphasis added.)

We are of the opinion that Walter's future inheritance—contingent only on his surviving his mother—wholly is distinguishable from the situations in *Rubin* and *Krause*. Unlike those cases, Walter's inheritance did not depend on potential changes in the donor's wealth or property disposition. Walter's deceased grandfather, for obvious reasons, and Walter's mother, according to the trial court's conclusion, could in no way prevent Walter's inheriting his share of the testamentary trust. Thus, we conclude that the contingency in the present matter is much more similar to the contingencies in vested and unvested pension benefit cases; Walter needed only to live to his mother's death to acquire certain rights in his grandfather's trust, just as employees need only live to a certain age of retirement to receive their benefits. We hold, therefore, that the judgment and agreement, providing for an increase in Walter's alimony payments to Julie, are enforceable as a matter of law.

### Conclusion

For the foregoing reasons, we affirm the order of the Family Court, and remand the papers in this case thereto.